## LYELL THEATRE CORPORATION, et al., Plaintiffs,

### v.

## LOEWS CORPORATION, et al., Defendants.

### No. CIV–71–571.

United States District Court,
W. D. New York.

Aug. 4, 1981.

---

Cesari & McKenna, Boston, Mass. (Martin J. O'Donnell, Boston, Mass., of counsel), for plaintiffs.

Jaeckle, Fleischmann & Mugel (Henry W. Killeen, III and Ralph C. Hardesty, Buffalo, N. Y., of counsel), for National General Pictures Corp., National General Corp., Cinerama, Inc., Cinerama Releasing Corp.

Raichle, Banning, Weiss & Halpern, Buffalo, N. Y. (David C. Diefendorf, Buffalo, N. Y., of counsel), for Columbia Pictures Industries, Inc., United Artists Corp., Paramount Pictures Corp., Transamerica Corp., Gulf & Western Industries, Inc., and Metro-Goldwyn-Mayer, Inc.

Harris, Beach, Wilcox, Rubin & Levey, Rochester, N. Y. (James C. Gocker, Rochester, N. Y., of counsel), for John R. Martina, Morris P. Slotnick, Jo-Mor Enterprises, Inc.

Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, N. Y. (Beryl Nusbaum, Rochester, N. Y., of counsel), for Loews Doe Corp., Loews Corp.

CURTIN, Chief Judge.

This case is among the oldest on my docket. It was commenced almost a decade ago on December 16, 1971. The complaint alleges numerous antitrust violations in the sale and bidding for first and second-run movies in the Rochester, New York, area. Plaintiffs seek damages in excess of $12 million.

On March 20, 1980, defendants moved to dismiss or, in the alternative, to compel discovery. At oral argument on March 27, 1980 I referred the motion to Magistrate Edmund F. Maxwell to hear and report. The case had been before him for supervision of discovery intermittently since October 5, 1977. The Magistrate filed his report on April 9, 1980. He recommends that the motion to dismiss or compel be denied but that each of the attorneys for defendants be awarded a nominal sum for their expenses in making these motions and that the discovery cutoff date as it relates to plaintiffs not be extended. The parties were given opportunity to file their objec-

tions and comments. Currently before the court are defendants' objections to the report as well as their original motion to dismiss based on Federal Rules of Civil Procedure, Rule 37. The court has also considered this as a motion to dismiss for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure. For the reasons which follow, the complaint will be dismissed.

## LAW

The purpose of discovery has been succinctly stated as 1) to narrow the issues; 2) to obtain evidence for use at trial; and 3) to secure information about the existence of evidence. Wright and Miller, *Federal Practice and Procedure*, Civil § 2001. The basic philosophy of the present federal discovery procedure is that prior to trial, every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged. *Id. See also,* 4 *Moore's Federal Practice* § 26.02[2]. Consequently, the discovery process can be seen as a supplement to the ancient pleading process. It was designed to prove an expedient alternative to what had often been prolonged pleading abuse. Nonetheless, discovery practice has not always been as quick and efficient as its authors intended. *See generally,* W. D. Brazil, *Civil Discovery: Lawyers' Views of its Effectiveness,* [1980] Amer.Bar Found. Res.Jrnl. 787.

Under Rule 37, the courts have an arsenal to assure discovery against the obfuscating or reluctant party. *See, e. g., National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1974); *Cine Forty-Second Street Theatre Corporation v. Allied Artists Pictures Corporation,* 602 F.2d 1062 (2d Cir. 1979). Severe sanctions may issue for failure to obey an order to permit discovery. Rule 37(b)(2). The rules are flexible in this respect. Under Rule 37(b) the court shall make such orders "as are just." The Advisory Committee's notes explain that Rule 37 provides generally for sanctions against parties or persons "unjustifiably resisting

discovery." *Federal Rules of Civil Procedure,* 48 F.R.D. 487, 538 (1970).

Under Rule 41(b) the courts have another weapon against the unwilling litigant, beyond sanctions which can be employed only to resolve discovery problems. *Societe Internationale v. Rogers,* 357 U.S. 197, 207, 78 S.Ct. 1087, 1093, 2 L.Ed.2d 1255 (1958). Failure to comply with a court order is a separate basis for dismissal. Dismissal is particularly appropriate under Rule 41(b) where there has been a willful failure to prosecute on the part of the litigant himself. *Chira v. Lockheed,* 634 F.2d 664 (2d Cir. 1980). For example, where there has been complete intransigence in the face of a clear-cut order, *Chira, supra* at 666, or where there has been a total failure to prosecute and to complete discovery as directed, *Ali v. A & G Company, Inc.,* 542 F.2d 595 (2d Cir. 1976), the sanction of dismissal has been permitted. *See also Taub v. Hale,* 355 F.2d 201 (2d Cir.), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1924, 16 L.Ed.2d 1020 (1966). Gross professional negligence—that is, where counsel clearly should have understood his duty to the court—may also constitute an adequate basis for ordering the ultimate sanction. *Cine, supra* at 1068.

■ The court should look to the overall conduct of the litigation before imposing any sanction, particularly one so harsh as dismissal. *Ali, supra,* (court referred to three separate "delinquencies.") However, if the lesser remedies are inadequate in a given case, or if the client was an active participant in or an instigator of his attorney's misconduct, the court has the "open authority to dismiss the case." *Ali, supra.*

■ In short, while the sanction of dismissal cannot be imposed lightly, it is available to the court to ensure the smooth and fair operation of discovery. "Without adequate sanctions, the procedure for discovery would be ineffectual." Wright and Miller, *Federal Practice and Procedure,* Civil § 2281. If the overall conduct of the litigation reflects willfulness, bad faith, gross negligence, or any other fault of the party rather than inability to comply, then the

sanction of dismissal is warranted. *See generally,* Wright and Miller, *Federal Practice and Procedure,* Civil §§ 2284, *et seq.*

## BACKGROUND

The events leading up to the instant motion to dismiss can only be understood in light of the long history of abuse in this case.

The case was initially filed in 1971 and assigned to the Honorable Harold P. Burke in Rochester. The parties engaged in a variety of discovery activities until roughly 1972. Beginning in 1973, however, very little took place. For example, in 1974, the sole entry on the docket sheet was the first of what were to be several withdrawals of appearance of the attorneys for the plaintiffs and replacements by others. With the entry of the new attorneys in 1975, additional discovery took place. However, in July of 1975, the progress of this case came to a sudden and absolute halt.

At about this time, the plaintiffs' then counsel advised the Magistrate:

> I am unable at this time to estimate when the Rochester action might be ready for trial because of the large volume of pre-trial discovery work that remains to be done. I assure you, however, that I will progress it with reasonable diligence.

Despite this assurance, plaintiffs took virtually no action in this case for the next two years. *See* letter from Frederick M. Lavin, dated June 11, 1975 to the Magistrate.

According to the docket, nothing took place in 1976 at all. In fact, there was no activity until July of 1977. At that time, when I examined the docket of the related case of *Lyell Theatre Corporation v. Columbia Pictures Industries, Inc., et al.,* Civ. 74–132, which was pending on my docket, I discovered that no steps had been taken to prepare this case for two years. Upon inquiry, the attorney for plaintiff informed me that he had withdrawn. Mr. Vincent Martina, the president and major stockholder of plaintiff Lyell, told me that a lawyer had not represented the corporation since November 1976 and that he had been at-tempting to retain counsel. A meeting was set for June 20, 1977. Defense counsel appeared, but no one appeared for plaintiff.

On July 6, 1977, I issued an order directing plaintiffs to obtain substitute counsel in both cases before September 16, 1977. I also noted that failure to obtain counsel to prepare the case for trial would result in dismissal. On September 15, 1977, one day before the deadline, plaintiffs' third counsel filed his notice of appearance and requested an extension to September 30, 1977. Although the court could have dismissed for failure to prosecute in July 1977, and although there had already been an extension granted in order to procure new counsel, once again the court acquiesced to plaintiffs' request and granted an additional extension. Plaintiffs were given until September 30, 1977. Plaintiffs' counsel agreed to supply an outline of the proceedings to the court by October 5, 1977. Plaintiffs failed to comply.

In light of this compounded failure to comply with the court's order, the defendants moved to dismiss the complaint. Although the motion to dismiss was certainly not without some merit, on December 1, 1977, I denied the motion, thereby granting the plaintiffs additional opportunity to move their case forward. Despite my oral direction that discovery was to continue, plaintiffs took no further action for three months.

In March 1978 plaintiffs filed answers to interrogatories which defendants had previously filed. Certain defendants objected to the plaintiffs' answers and moved to compel. In an order dated April 18, 1978, this court directed the plaintiffs to review defendants' interrogatories and submit a supplemental response not later than May 15, 1978. Once again, plaintiffs failed to comply. And once again, no sanction was imposed at that time.

Although plaintiffs did supply some supplemental answers on May 26, 1978, plaintiffs did not complete their supplementation until November 8, 1978, well beyond the May 15 court-imposed deadline. The court

neither received a request for, nor granted an extension of, either of these two late filings. This was another violation of my orders. It is clear that even before the case was sent to the Magistrate in March 1980 there was ample justification for the court to have imposed sanctions. Despite this, plaintiffs were given one final opportunity to prepare the case for trial.

Subsequent to plaintiffs' failure to supply supplemental responses due on May 15, I directed that motions by defendant Paramount Pictures to compel answers to interrogatories and motions for production by plaintiffs be referred to the Magistrate for further proceedings. Order of May 23, 1978.

Discovery before the Magistrate, in the form of an exchange of documents, continued through the spring of 1979. Certain discovery motions were considered by the Magistrate, and he directed that all discovery be completed by August 15, 1979. The instant motion to dismiss had its genesis in a series of actions at that time.

The original motion was based on the Magistrate's orders "of November 14, 1977 and January 13, 1980; and upon all pleading and proceeding heretofore had herein." As explained in greater detail in the Magistrate's report, there had been a number of deadlines set for the conclusion of all discovery. Each had been extended by the Magistrate, however, when it became clear that plaintiffs could not meet them. On June 12, 1979 the Magistrate set August 15, 1979 as the final discovery cutoff date. The deposition of Mr. Martina was scheduled for that day. During the deposition it became evident that it would take a long time to complete. Because plaintiffs' files were voluminous and disorganized, there was a delay after each question so that Mr. Martina could thumb through the files to find the pertinent papers.[1] The parties agreed to extend the time of discovery for three weeks to allow plaintiffs to prepare a sum-

mary of the file. All agreed that this would substantially aid in the taking of the depositions.

On that day, the Magistrate received a call from Henry Killeen III, Esq., representing the National General Pictures Corporation, Cinerama, Inc., and Cinerama Releasing Corporation, who advised that he and the attorneys representing all the other parties were attending a deposition of Mr. Martina who was testifying in his capacity as president of Lyell Theatre Corporation. He further indicated that, after several days of taking the deposition of Mr. Martina, all the attorneys present felt that the deposition could be expedited if the matter were adjourned until plaintiffs' counsel could compile a summary of certain information. According to the Magistrate,

> the summary was to be based on documents already produced for inspection and hopefully would avoid long delays which might be encountered if plaintiff was required to individually locate and testify concerning each such document during the course of the deposition.

Report and Recommendation of the Magistrate, filed April 9, 1979, at 3. Consequently, the Magistrate directed that discovery be continued until October 15, 1979.

Plaintiffs did not comply with their promise to supply the summary in three weeks, and on October 15, 1979, the day discovery was to have been completed, counsel wrote to Magistrate Maxwell seeking a 45-day extension of his commitment to supply the needed information. He described the situation as follows:

> The last session of the deposition was in mid-August, at which time it was recessed by agreement of all counsel pending compilation by plaintiffs and their attorneys of comparative analysis sheets for each of the films as to which an antitrust violation is charged. These sheets are to set forth, for each film, in order to provide in summary form a com-

---

1. In 1978, Mr. Diefendorf, attorney for defendants Columbia Pictures, et al., had complained during the argument of one of the motions that when he met with Mr. Martina to examine these files, Buffalo and Rochester records were mixed together, and that they were very disorganized.

parative analysis of the complete terms of the bids of all parties and other pertinent information concerning the exhibition of the film.

Plaintiffs' attorney also indicated to the Magistrate that the deposition would resume within a week after the summary sheets were furnished. As the letter-request for an extension was not opposed by defense counsel and as defendants had in the interim applied for and been denied a transfer from the Judicial Panel on Multi-District Litigation on November 14, 1979, the Magistrate directed that counsel reschedule all depositions and complete discovery by January 30, 1980.

On December 14, 1979, and again on January 2, 1980, the Magistrate contacted the plaintiffs' attorney and was advised that the summary sheets had not yet been prepared. Plaintiffs wrote back, making a commitment to have the summary to defendants' counsel not later than February 5, 1980, and to be ready for deposition on February 11, 1980. No formal order was entered. In light of various scheduling problems concerning the defendants' attorneys and in light of the promise that the summary sheets be supplied by February 5, 1980, however, the Magistrate entered yet another order on January 31, 1980, extending the discovery cutoff date until March 31, 1980.

The ill-fated completion of the deposition was not to be, however. The plaintiffs violated their promise to the Magistrate again and did not deliver the summaries on time.

It is worth noting that at no time did plaintiffs' attorney contact the Magistrate in order to secure an extension of the deadline for discovery. Rather, it was the Magistrate who initiated these calls in order to assure himself that discovery was continuing.

On February 5, 1980, plaintiffs' counsel forwarded certain information concerning only two of the four defendants. Mr. Diefendorf, attorney for defendants Columbia Pictures Industries, Inc., *et al.*, wrote immediately, protesting the incompleteness of the submission. In addition, Mr. Killeen wrote to plaintiffs' counsel on February 12, 1980. He pointed out that plaintiffs had failed to include any material for Cinerama Releasing Corporation and National General Pictures Corporation, and was in violation of the agreement. He asserted that depositions could not go forward until the summaries were received, and if plaintiffs failed to produce, a motion to dismiss would be filed.

In spite of the promises of plaintiffs' counsel, the order of the Magistrate, and the obvious need to resolve this long pending suit, plaintiffs' counsel called Mr. Diefendorf, seeking an adjournment until March so that his client could go on vacation. Counsel for plaintiffs again promised early delivery of the remaining part of the summary. Late in February he promised to send them one-to-two weeks prior to the deposition which was set for March 24. On March 19, when they had not arrived, Mr. Jolcuvar, West Coast counsel for Cinerama Releasing Corporation and National General Pictures Corporation, phoned plaintiffs' counsel, who agreed to send the data by express mail that night. But he subsequently acknowledged that he had failed to send it. In fact, not until March 27, 1980 were the summaries received.

Faced with the prospect of having all discovery cut off on Monday, March 31, 1980, by the Magistrate's order, Mr. Killeen filed this motion to dismiss on March 20, 1980. All defense counsel joined. Finally, after this motion was filed, plaintiffs' counsel sent summaries for National General Pictures Corporation and Cinerama Release Corporation, which he received on March 24, 1980. Counsel for National General Pictures prepared and filed an analysis of the proffered material, concluding that it was totally inadequate.[2] Plaintiffs' counsel has

---

**2.** The attorney for the National General Pictures and Cinerama Releasing Corporation relates without contradiction that these defendants have long since ceased operation in the motion picture business and that all employees having any knowledge of the facts in this case

failed to respond to his analysis or send any further material.

In considering the motion, the Magistrate examined only the period from the spring of 1978 to April 1980, roughly the period since the case was referred to him. Report at 2. Evidently the Magistrate declined to consider the history of this litigation prior to 1978.[3]

Focusing on the post-spring 1978 period, the Magistrate reported that there were three causes for the delay in discovery. The first cause was that defendants made a motion before the Multidistrict Panel to transfer this litigation to the Southern District of Texas, which resulted in an interruption in the discovery proceedings. Second, there were difficulties in setting mutually acceptable deposition dates. The Magistrate concluded that this cause for delay could not be laid exclusively to the plaintiffs. The third cause identified was plaintiffs' delay in furnishing summaries as agreed. The Magistrate concluded that this reason for delay was attributed solely to the plaintiffs. However, the Magistrate declined to recommend dismissing the complaint because

> [t]his delay did not ... prevent defendants from proceeding with the deposition if they desired, nor was the delay in furnishing summaries a violation of any order of this court. I thus feel that a

dismissal of the complaint at this time because of the failure of plaintiffs' counsel to adhere to an informal agreement, the purpose of which was to expedite discovery, would be too severe a penalty. Report at 8–9.

Nonetheless, the Magistrate recommended that there be no extension of the cutoff date as it relates to any further discovery sought by the plaintiffs because he deemed the plaintiffs "primarily liable" for the delay in completing discovery. Report at 10. In addition, the Magistrate recommended awarding attorneys' fees of $200 to each attorney appearing for defendants because of his belief that without the motion, plaintiffs would still not have furnished the summaries. Report at 10 and 11.

Although the defendants are in general agreement with the Magistrate's report, they take strenuous exception to his failure to recommend dismissal. Their primary argument is that the long delay in both responding to discovery requests and in the overall course of this lawsuit has caused them severe prejudice. They argue that there was in fact a violation of the Magistrate's order. Most importantly, the defendants argue that the Magistrate's failure to consider the prior history of this litigation was error. They contend that had the Magistrate also considered the numerous

---

have long since dispersed and would be most difficult to find. One of their key witnesses is now deceased. For this reason alone, the failure of plaintiffs to proceed with the action is extremely prejudicial to defendants. Also, as already noted, plaintiffs have left unanswered the affidavit of attorney Paul A. Jolcuvar of March 24, 1980 (Doc. No. 156) in which he relates without contradiction that the information with respect to his defendants, Cinerama Releasing Corporation and National General Pictures, is completely inadequate. He explains that in the analysis for Cinerama Releasing Corporation there are pages with no heading which simply list figures for gross rental and film rental expressed as a percentage of gross. There is no way of knowing, however, what motion pictures and theaters are tied to each figure. Plaintiffs do not give information about the times which pictures were distributed, about gross receipts collected, or about film rental paid by plaintiffs. The preparation of documents such as these certainly is essential

to the plaintiffs' case. If plaintiffs were seriously pursuing this litigation, this kind of information would have been tabulated and in good form many years ago.

**3.** At oral argument, Mr. Killeen, on behalf of all defendants, stated that the Magistrate had explicitly refused to take into account, in reaching his decision, the history of this case prior to the reference to the Magistrate in late 1977. Without contradiction, Mr. Killeen stated that the Magistrate had only considered the matters directly prior to the reference by this court. Mr. Killeen said:

> Now, I have one other point with respect to the Magistrate's decision. He declined to consider the factual background in the case and what he told us in the oral argument was that he did not want to consider matters in which he had not personally participated.

*Transcript* of Court proceedings, April 24, 1980 at 29–31.

prior delays, failures to comply, broken promises by plaintiffs' attorneys, and general non-cooperation, he would have been drawn to the conclusion that dismissal of the complaint *en toto* was warranted.

Plaintiffs, for their part, argue simply that the report by the Magistrate should be accepted, including the sanctions. Concurrence in Magistrate's Report, filed April 22, 1980. Document No. 152. At oral argument, plaintiffs' attorney admitted that the "judgment" of the Magistrate was correct and conceded that he had made numerous errors in responding to the discovery requests. In explaining the prolonged delay in supplying the particular requested summaries which prompted the most recent reference to the Magistrate, plaintiffs' attorney stated, "I took a great deal longer, continually requested more time. There is no question about that and there is nothing I can say. The record speaks for itself." Transcript of April 24, 1980 at 56.

### ISSUES BEFORE THE COURT

█ The primary issue before the court is to determine whether the Magistrate's sanctions against plaintiffs—payment of $200 in expenses to each attorney appearing for defendants and no extension of the cutoff date for plaintiffs' discovery—are adequate in light of the plaintiffs' conduct of this litigation during the last decade. If it is not a sufficient sanction, then the question arises whether there has been the kind of gross negligence such that dismissal is warranted. *Cine, supra* at 1068, or whether in fairness to the plaintiffs some lesser sanction will suffice. *See generally, Santiago v. Rivera*, 553 F.2d 710, 712 at n. 1 (1st Cir. 1976).

It was argued before the Magistrate that dismissal of the complaint because of failure of plaintiffs' counsel to adhere to an informal agreement, the purpose of which was to expedite discovery, would be too severe a penalty. As is clear from the court's recitation of the history of abuse in this case, this is not the first time that plaintiffs have failed to comply with an order, live up to a promise, or act with courtesy and dispatch in regard to the other litigants in this case. Failure to abide by what plaintiffs termed in oral argument before the Magistrate an "informal discovery agreement," in light of the series of final discovery cutoff orders by both the Magistrate and this court, is a most serious matter.

Assuming *arguendo* that only an informal agreement was reached, counsel for the defendants should not be penalized for their having attempted to reach an informal agreement in order to expedite this litigation. This flies in the face of the purpose of the discovery rules and our own Local Rule 17 concerning cooperation among counsel in discovery matters. The defendants' reliance on the promises of plaintiffs' to supply the long-promised summaries by February 5, 1980 was in good faith. There is no dispute as to the substance of the agreement. Since it is a fundamental purpose of the Federal Rules to remove technical procedural impediments before litigants as far as possible, it follows that such informal agreements which are designed to expedite the discovery process and to mitigate the work of the court are to be encouraged. *See generally*, 4A *Moore, Federal Practice* §§ 29.02, 29.01[3].

Moreover, the repeated broken promises to the Magistrate and to this court to provide information by a stated date makes this latest delay in the preparation of this case a matter requiring significant sanction. *Asociacion Empleados, etc. v. Rodriquez Morales*, 538 F.2d 915 (1st Cir. 1976); *Theilmann v. Rutland Hospital*, 455 F.2d 853 (2d Cir. 1972). In determining what sanction to impose, the court considers particularly important the Magistrate's observation that:

It is my further belief that the summaries would still not have been furnished and the plaintiffs would have further procrastinated in the scheduling of the depositions except for the filing of these motions.

Report at 10.

Another consideration in determining what sanction to impose is that the actual finding that plaintiffs are "primarily liable"

for the delay is unchallenged in the proceeding before me. It is significant that the Magistrate recommended sanctions and that plaintiffs' counsel does not take issue with the Magistrate's report in any way, but rather urges the court to accept the recommended sanctions.

In addition, no amount of explanation can obscure the fact that the Magistrate's cutoff date prevailed over any agreement by the parties, absent his consent. Late in February, discussions were held among the attorneys concerning a March 3 date for the deposition. The instant Rule 37 motion was brought on in the form of an order to show cause. No firm date for the deposition had been agreed upon at the time that the motion was filed. Although it does appear both from the correspondence and the Magistrate's report that counsel had come to an *informal understanding* among themselves concerning the feasibility of a March meeting at which time the long-delayed deposition could be completed, it remains that the Magistrate's order of November 14, 1979 setting a January 30 cutoff date was violated. The fact that the Magistrate chose to ignore this violation and set a new cutoff date on January 31, 1980 does not alter this conclusion. In addition, plaintiffs' failure to supply the summaries by February 5, 1980 had the effect of forcing defendants to violate the subsequent cutoff date of March 31, 1980 as well.

Discovery was completed neither by the date set by the Magistrate nor pursuant to the agreement among the parties. Plaintiffs did not supply the promised summaries by February 5, 1980, nor did they supply them by the subsequent date agreed to by the parties. Under these circumstances, I must conclude plaintiffs' delaying actions had the same effect as a direct violation of an order. It would be sophistry to excuse plaintiffs' misconduct on the grounds that it may have inevitably led to a violation of a Rule 37 order, but was not a direct violation itself.[4]

In short, while the Magistrate carefully considered the most recent lapse on the part of the plaintiffs, he felt compelled by the reference from the court not to consider the earlier delinquencies. He interpreted the direction of this court to evaluate the most recent motion to dismiss in light of the events personally known to him.

Perhaps the Magistrate's recommended sanction would be sufficient if the instant violation were an isolated incident. This is consistent with how the Magistrate evidently thought he must view the matter in light of the court's reference. Having reviewed the Magistrate's report, I find that it is unobjectionable, as far as it goes. However, the history of this case makes clear the proposed sanctions are inadequate. In considering the instant motion to dismiss, the court must take into account not only the experiences of the Magistrate from spring 1978 to April 1980 but also the 7-year period since 1971, including the numerous motions before the Honorable Harold P. Burke, the Magistrate and before me.

Because of the repeated warnings and failures on the part of plaintiff Lyell, its president, and the several counsel, I believe only the ultimate sanction of dismissal will suffice. The court must consider not only the specific deterrent effect of its order, as it would in seeking compliance in a civil contempt matter, but also the general deterrent effect of its order on the instant case and on other litigation. *Accord, Cine, supra* at 1066. *Note, The Emerging Deterrence Orientation of Imposition of Discovery Sanctions,* 91 Harv.L.Rev. 1033 1041–42 (1978). The prosecution of this case from the beginning constitutes gross negligence. Plaintiffs have received numerous extensions through the years, have ignored countless warnings of the court and Magistrate, failed to abide by many promises made to the defendants, and have ig-

---

**4.** I note that the Magistrate found that the plaintiffs' actions did not prevent defendants from "proceeding with the deposition if they desired." *Report* at 8. This misses the point, however. Defendants relied on plaintiffs' promise. By the time it became clear that plaintiffs would not timely produce the promised summaries, it was too late simply to continue with the deposition. The time before the Magistrate's cutoff date had been forever lost.

nored and failed to comply with orders of the court and Magistrate.

The court does not lay all the blame on plaintiffs' current counsel. There have been at least two other lawyers for plaintiffs who participated in the suit until recent years. Mr. Martina, president of the plaintiff, was himself before the court on several occasions and was directed to get counsel and pursue the action vigorously. There is no question that he knew what his obligations were. *Cira, supra.* Yet he has consistently ignored the court's instructions.

In conclusion, the history of this case and the sanctions which other courts have imposed in similar circumstances makes evident that no sanction short of dismissal will suffice. *See generally, Epstein, et al., An Up-Date on Rule 37 Sanctions,* 84 FRD 145 (1980).

The Report and Recommendations of the Magistrate are accepted in part and rejected in part. Pursuant to Rules 37 and 41, plaintiffs' complaint is dismissed.

So ordered.