DYN LOGISTICS SERVICES, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Systems Engineering Associates Corp., Intervenor-Defendant.

No. 444–84C.

United States Claims Court.

Sept. 26, 1984.

**354**

George D. Ruttinger, Washington, D.C., for plaintiff.

J. Weili Cheng, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

Joseph S. Wager, Washington, D.C., for intervenor-defendant.

## OPINION

REGINALD W. GIBSON, Judge:

Subject case is before the court on Intervenor-Defendant's (intervenor) Motion To Dismiss and To Impose Sanctions, against plaintiff, with prejudice.

This pre-award bid protest case was filed by plaintiff, DYN Logistics Services, Inc. (DLSI) on August 30, 1984 and supplemented thereafter, *infra*, to temporarily, preliminarily, and permanently enjoin the Department of the Navy from awarding a contract other than on a multiple award basis. It also sought a declaratory judgment against the award of a single aggregate contract because the lowest overall cost to the government would be achieved by awarding multiple contracts.[1] On September 5, 1984, plaintiff and defendant reached an agreement pursuant to which the award would be made on a multiple basis and plaintiff would move to dismiss with prejudice after the award of the contract on September 7, 1984. As a result of said agreement, the court issued an order vacating the previously scheduled September 7, 1984 trial date.

On September 10, 1984, Systems Engineering Associates Corp. (SEACOR), the lowest responsible/responsive bidder under the subject solicitation filed a Motion to Intervene,[2] together with a panoply of motions for dismissal, sanctions, temporary, preliminary, and permanent injunctive relief and a declaratory judgment. Conversely, SEACOR sought an order restraining an award under the solicitation, *infra*, on a multiple contract basis. The motion to dismiss is premised on two grounds—first, the equitable doctrine of unclean hands, and second, RUSCC 41(b) for failure to comply with RUSCC 65(f)(2).

Jurisdiction in this court is premised on section 133(a)(3) of the Federal Courts Improvement Act of 1982, 28 U.S.C. § 1491(a)(3).

The issue presented by the subject motion to dismiss is whether DLSI and its counsel knowingly misrepresented to the court and the Navy, by its certification, that it gave notice, as required by RUSCC 65(f)(2), of its intended filing of a pre-award bid protest application to SEACOR, the apparent lowest aggregate bidder, or to SEACOR's duly appointed attorney.

Premised on the pleadings and other submissions of the parties, including but not limited to affidavits and depositions, and following oral argument, the court granted intervenor's motion to dismiss with prejudice and allowed appropriate sanctions, *infra*.

---

1. A hearing was held on August 31, 1984; and inasmuch as defendant agreed to withhold award of a contract under the solicitation to anyone prior to midnight, Friday, September 7, 1984, the court denied plaintiff's motion for a TRO. The hearing on the preliminary injunction and the trial on the merits were consolidated (RUSCC 65(a)(2)) for trial to commence on September 7, 1984.

2. Following SEACOR's filing on September 10, 1984, a hearing was also held on its motion to intervene and for a TRO. The former was allowed and the latter was denied inasmuch as defendant agreed to withhold an award under the solicitation until midnight, September 17, 1984. Trial was set for September 17, 1984, on all of the pending issues raised by DLSI's and SEACOR's motions for preliminary and permanent injunctions and declaratory relief. The Navy did not take an adversarial posture, but simply averred that the government will "abide by the court's ruling on the issue of multiple award."

## FACTS

*Background:*

On May 11, 1984, the Navy disseminated Solicitation No. N00600–84–B–3626 (solicitation) for support services under the Intra-Fleet Supply Support Operations Program (ISSOP) for the Atlantic region, which included Portsmouth, Virginia; Philadelphia, Pennsylvania; Charleston, South Carolina; and Jacksonville, Florida. Pursuant to the ISSOP program, the successful contractor provides a wide variety of material support services to Navy ships and shore activities. Such activities include but are not limited to material offload, onload, backload, identification, inventorying, location audit, and a host of other service activities. DLSI is the incumbent, under an aggregate award contract which expires on September 30, 1984, and, with its predecessor in interest, has performed same for the past 12 years.

The solicitation was an advertised procurement[3] for an indefinite quantity service contract. Pursuant to such contract, the Navy orders all, a portion, or none of the estimated quantity for each line item in the solicitation. The basic contract year was 1985 (Lot I); in addition, there were two option years, 1986 (Lot II) and 1987 (Lot III). Within each of said lots there were the following service locations—Philadelphia, Portsmouth, Charleston, and Jacksonville.

The solicitation was issued to 90 firms and in response the Navy received three bids, all of which were deemed responsive by the agency. At bid opening, the three bidders ranked as follows:

| Rank | Bidder | Amount |
|------|--------|--------|
| 1 | SEACOR | $23,785,410 |
| 2 | DLSI | $24,942,038 |
| 3 | MCI | $32,701,815. |

[Each aggregate bid, *supra*, embraces Lots I, II, and III, for all four locations.]

While SEACOR's aggregate bid was the lowest, on a separate location basis it was

the lowest only with respect to the Philadelphia and Portsmouth locations for all lots. On the other hand, DLSI's bid, on a separate location basis was lowest with respect to the Charleston and Jacksonville locations by approximately $770,000. The following summarizes the foregoing results:

| Location | SEACOR's Bid Lots I, II, III | DLSI's Bid Lots I, II, III |
|----------|------------------------------|----------------------------|
| Portsmouth, VA | $10,664,571 | $12,420,014 |
| Philadelphia, PA | $ 4,720,926 | $ 4,898,795 |
| Charleston, SC | $ 6,665,519 | $ 6,112,959 |
| Jacksonville, FL | $ 1,724,393 | $ 1,514,107 |

[The court notes that there are minor discrepancies between the totals of these two columns and the aggregate total amounts of SEACOR's and DLSI's bid, respectively.]

*Split Award—Proposed*:

#1 Contract — SEACOR

| Location | All three lots | |
|----------|----------------|---|
| Philadelphia | $ 4,720,926 | |
| Portsmouth | 10,664,571 | |
| | | $15,385,497 |

#2 Contract — DLSI

| Location | All three lots | |
|----------|----------------|---|
| Charleston | $ 6,112,959 | |
| Jacksonville | 1,514,107 | |
| | | $ 7,627,066 |
| Total Costs Per Split Award | | $23,012,563 |

*Savings Calculation*

| | | |
|---|---|---|
| SEACOR—Lowest aggregate bid | | $23,785,410 |
| Total—Split Award | | 23,012,563 |
| Cost Savings—Per Split Award | | $ 772,847. |

*Operative Facts:*

Anticipating that the Navy would award a contract prior to August 31, 1984, respecting *all* lots under the solicitation to SEACOR, the lowest aggregate bidder, DLSI filed its complaint in this court for injunctive relief on August 30, 1984.[4] In

---

**3.** Subject to the Federal Acquisition Regulations (FAR) and Department of Defense FAR Supplement (DFARS).

**4.** On August 31, 1984, plaintiff supplemented its pleadings by filing an Application for a Temporary Restraining Order and a Motion for Preliminary Injunction. On September 4, 1984, it filed a Motion for Declaratory Judgment.

its Application for a Temporary Restraining Order, filed on August 31, 1984, the following certification appears at pages 1 and 2, purporting to comply with the mandatory obligation in RUSCC 65(f)(2): [5]

Plaintiff *certifies that its attorneys* have given notice to *the attorneys for* Systems Engineering Associates Corporation, *the apparent low aggregate bidder under the Solicitation,* of the *intended* filing of this application. (Emphasis added.)

On September 5, 1984, the Contract Review Board (the Board) approved the contracting officer's recommendation for a split award which would effect a $770,000 cost savings. On or about that time, DLSI and the Navy also entered into an agreement to the effect that plaintiff would move for a dismissal, with prejudice, upon the execution of the award as approved by the Board. *All* of the foregoing protest and conciliatory proceedings occurred in the absence of either the participation, presence, or knowledge of SEACOR, the lowest aggregate bidder. It was not until SEACOR's meeting with the Navy on September 7, 1984 to discuss the Board's split award determination that the former was first advised of the injunctive proceedings filed by DLSI on August 30, 1984. Consequently, on September 10, 1984, SEACOR filed its Motion to Intervene, together with its pleadings for certain equitable relief.[6]

Concomitantly, with the foregoing filings, intervenor also filed a Motion To Dismiss and To Impose Sanctions,[7] pursuant to RUSCC 41(b), the unclean hands doctrine, and RUSCC 11. Pertinent to this motion, the operative facts are primarily contained in the affidavits and depositions filed with the court of Christopher J. White, in-house counsel and of counsel for plaintiff; Stuart R. Reichart, of counsel, Fried, Frank, Harris, Shriver & Kampelman (Fried, Frank); Normand V. Lussier, counsel for the Naval Regional Contracting Center; and Thomas M. Madden, Jr., Executive Vice-President, SEACOR.

Christopher J. WHITE, in-house counsel and of counsel for DLSI,[8] stated in his affidavit that:

On August 29, 1984, I contacted the law firm of [Fried, Frank] ... *concerning representation of DYN Logistics in connection with bringing legal action in the U.S. Claims Court* on ... Solicitation No. N00600–84–B–3626 ...

I was informed by Stuart Reichart that the law firm would be *unable to represent us in this matter since there was a conflict with the apparent low bidder ... "SEACOR".*

\*       \*       \*       \*       \*       \*

Prior to filing of that complaint, I notified *Stuart Reichart* by telephone that

---

5. Notice to the successful bidder is required by RUSCC 65(f)(2) which states that:

If plaintiff's attorney knows the name and address of *the successful bidder,* he *shall* give him notice by telephone or telegram of the intended filing of the application, and *shall* certify in the application whether or not he has done so. (Emphasis added.)

\*     \*     \*     \*     \*     \*

DLSI's counsel responded as follows to the court's question at oral argument:
*Question:* Mr. Ruttinger, by your certification in your TRO did you purport to represent to the court that Plaintiff's counsel was complying with Rule 65(f)(2)?
*Answer:* Yes, Your Honor.

6. SEACOR's pleadings consisted of the Answer of Intervenor-Defendant and Cross-Complaint for Declaratory and Injunctive Relief; Application for Temporary Restraining Order; and Motion for Preliminary Injunction.

7. The sanctions prayed for were (i) dissolution of the settlement agreement between DLSI and the Navy; (ii) an order refusing to allow DLSI to oppose SEACOR's cross-claims; (iii) an order refusing to allow DLSI to introduce evidence regarding those cross-claims; and (iv) an order directing DLSI to pay all costs incurred by SEACOR in this litigation, including reasonable attorney's fees.

8. The court notes that although Mr. White was at counsel's table at all times during the hearing on SEACOR's motion, DLSI did not call him to testify respecting the ultimate fact in issue. In fact, neither party called any witnesses, but rather relied totally on affidavits and depositions. It is further noted that DLSI did not proffer a supplemental affidavit from Mr. White taking issue with the statements in Mr. Reichart's affidavit.

suit was going to be filed in the U.S. Claims Court that day [August 30, 1984] concerning the subject solicitation. (Emphasis added.)

Mr. Stuart R. REICHART, of Fried, Frank, acknowledged in his affidavit that on August 29, 1984, Mr. White contacted him telephonically and sought to *retain* Fried, Frank to represent DLSI with regard to subject procurement. He stated that he declined to represent DLSI because of an ethical conflict of interest in that Fried, Frank "currently represents SEACOR in other matters." Mr. Reichart further stated that during the course of a subsequent conversation with Mr. White (which occurred no later than August 31, 1984), "concern[ing] a wholly different matter in which Fried, Frank was representing [DLSI's parent], Mr. White informed me that DLSI had in fact filed suit in the U.S. Claims Court on ... August 30, 1984." He concluded his affidavit, stating:

> 5. ... I made clear [in these telephone conversations with Mr. White], that Fried, Frank would *not act in any capacity for either DLSI or SEACOR in connection with this potential litigation. I said nothing to Mr. White to indicate that I intended to, or had informed SEACOR of DLSI's intentions* to commence an action in the Claims Court. Furthermore, I did not consider these telephone calls from Mr. White to be notice to SEACOR, through me as its counsel, of the intended filings.
>
> 6. I did not convey to SEACOR the information given to me by Mr. White regarding the commencement of the legal action .... (Emphasis added.)

At oral argument, counsel for DLSI conceded that plaintiff had a copy of SEACOR's bid and thus knew the name and address of the lowest aggregate bidder prior to August 30, 1984. His response to the following question of the court is equally illuminating:

> *The Court:* And did plaintiff's counsel make any effort to inquire of Mr. Reichart as to whether in fact Mr. Reichart

represented SEACOR with respect to this particular action? ...
*Mr. Ruttinger:* No, Your Honor.

Mr. Normand V. LUSSIER, counsel for the Navy, stated in his affidavit that:

> When SEACOR did not intervene in the proceedings and did not contact the Navy with respect to DLSI's court action, I became concerned that SEACOR might in fact not be aware of the action....

Out of an apparent abundance of caution, Mr. Lussier discussed said matter with Department of Justice counsel who in turn "called DLSI's counsel ... and determined that notice of the action had been given to Stuart Reichart ... of [Fried, Frank]." Because of said call, they were left with the impression that Fried, Frank was SEACOR's counsel for purposes of this solicitation. Mr. Lussier further stated that at a meeting on September 7, 1984, with SEACOR's legal representatives "I was surprised to learn that SEACOR had not been notified of the action."

Mr. Thomas M. MADDEN, Executive Vice-President of SEACOR, stated in his affidavit, that he telephoned the Naval Regional Contract Center (NRCC) on September 5, 1984, the day the Contract Review Board made its split award determination, and inquired as to the status of the award. He was informed that "SEACOR should hear something by ... Friday, September 7, 1984." This was the day the Navy anticipated making the split award, and DLSI, pursuant to the agreement, would move to dismiss its action, with prejudice. However, on September 6, 1984, Mr. Madden was called by an NRCC buyer and advised that SEACOR had been selected for two of the four sites. Mr. Madden expressed extreme surprise and thereafter contacted Fried, Frank, who was also SEACOR's counsel, *in an unrelated matter,* apparently for legal advice. He was informed by Mr. Ken Kramer that Fried, Frank could not represent SEACOR because the firm was also representing DLSI "on another matter." The next day, at a meeting on September 7, 1984, with the Navy and SEACOR's current counsel, Mr. Madden

was advised that "DLSI had filed for a [TRO] ...; and that the Navy and DLSI had executed a settlement agreement splitting the award between DLSI and SEACOR." Mr. Madden stated that prior to this meeting "SEACOR was totally unaware of any actions of this nature."

*Contentions of the Parties:*

SEACOR argues, in subject motion, that the plaintiff's complaint should be dismissed under the equitable doctrine of unclean hands, and RUSCC 41(b) for failure to comply with RUSCC 65(f)(2) because "... DLSI falsely and, SEACOR believes, in bad faith represented that notice of this action had been given to SEACOR through its attorneys [with respect to this solicitation]." It avers that neither SEACOR nor its attorneys, in this procurement, received notice of DLSI's intended filing of a pre-award bid protest. Moreover, it postures that DLSI represented to both the court and the Navy "... that notice had been served on SEACOR." SEACOR also contends that because of the failure of plaintiff's attorneys to give the required notice to SEACOR, *ex parte* negotiations between DLSI and the Navy resulted in a split award settlement agreement.[9] SEACOR urges that because the settlement agreement was made without the contracting officer considering its factual and legal positions, contrary to applicable regulations,[10] it stands to lose a contract award worth not less than $7.6 million. Further, SEACOR stresses that if the court finds that DLSI satisfied RUSCC 65(f)(2) and proceeds with a trial on the merits, given the court's limited standard of review, it would be "virtually impossible" to overturn the contracting officer's *ex parte* decision to make a multiple award.

DLSI, in opposition, argues that notice was given to SEACOR, as evidenced by Mr. White's affidavit. DLSI urges that the sanctions sought are too drastic and that there is no plausible basis for the assertions of "bad faith or deliberate noncompliance with the Rules." Rather, DLSI believes SEACOR is quarreling with the "form of the notice given to SEACOR's attorneys." DLSI downplays any legitimate prejudice inuring to SEACOR "by its alleged lack of knowledge of this action" prior to September 7, 1984, on the hypothesis that it "was given notice of the intended split award by the Navy *before the award was made,* and in time for SEACOR to file for intervention in this suit [which it did on September 10, 1984]." Further, DLSI casts blame on "SEACOR's own counsel, Fried, Frank, and to some extent with the Navy" for failure to notify SEACOR.

Defendant opposed SEACOR's motion to dismiss, arguing that the court's role is to decide the legality of the agency's decision in making a multiple award rather than an aggregate award. Further, defendant contends that a remand to the contracting officer would only lead to further litigation.

## DISCUSSION

The court observes that the first quoted paragraph of Mr. White's affidavit, *supra,* clearly and unmistakably discloses that the sole purpose of the contact on August 29, 1984, was merely to retain Fried, Frank's services "concerning representation of DYN" in this court respecting subject solicitation. This conclusion is totally corroborated by the affidavit of Mr. Reichart, with respect to which no effort whatsoever has been made by DLSI to rebut by direct testimony or a counter affidavit from Mr. White. Certainly, there was no other relevant purpose, otherwise Mr. White would have so stated. As established by the affidavit of Mr. White, and the court finds as a fact, *the* purpose of the telephone call on August 29, 1984, was simply to retain, and no other, the services of Fried, Frank to represent DLSI in subject litigation.

The third quoted paragraph, *supra,* of Mr. White's affidavit *states* that prior to the filing of the complaint on August 30, 1984, "I notified Stuart Reichart by telephone that suit was going to be filed in the

---

9. Intervenor's assertion that said agreement was filed with and adopted by the court is in error.

10. FAR 14.407–8(a)(3).

U.S. Claims Court that day concerning the subject solicitation." Undoubtedly, this statement *purports* to establish that Mr. White gave the RUSCC 65(f)(2) notice to SEACOR through its duly appointed counsel respecting this solicitation, which fact SEACOR categorically denies. This is clearly evident from the certification contained in the TRO (see page 5, *supra*), the subtle position taken by counsel at oral argument and in its memorandum in opposition to SEACOR's motion to dismiss filed September 12, 1984, and the fact that Fried, Frank were the only attorneys to whom DLSI allegedly gave such notice. In addition, at oral argument plaintiff's counsel candidly conceded the fact that by the certification it was intended to be represented to the court that counsel complied with RUSCC 65(f)(2).

Nowhere is it stated in Mr. White's affidavit that he specifically inquired whether Fried, Frank was SEACOR's counsel in connection with this solicitation; neither does he contend nor state that he specifically (or by implication) requested Mr. Reichart to advise SEACOR of DLSI's intended filing of the application. In addition, the fact that Mr. White stated that he apprised Fried, Frank on August 30, 1984, before suit was filed in the U.S. Claims Court, of the intended filing is not to say that he knew Fried, Frank to be the then counsel for SEACOR respecting subject solicitation. The fact is he did not so contend, and the evidence is clearly consistent with both points of fact.

Also, the evidence shows that Mr. Reichart specifically informed Mr. White that he would *not* act in any capacity "for either DLSI or SEACOR in connection with this potential litigation." Moreover, Mr. Reichart explained that he "said nothing to Mr. White to indicate that [he] intended to ... inform ... SEACOR of DLSI's intentions to [initiate litigation]." This court is compelled to find, from the foregoing, that at no time did Mr. White (i) inquire of Mr. Reichart whether he (Fried, Frank) represented SEACOR in connection with subject solicitation, and (ii) request Mr. Reichart to apprise SEACOR of DLSI's intended filing

of an application for injunctive relief in any court respecting said procurement. This court further finds that Fried, Frank was not SEACOR's counsel at anytime *respecting subject solicitation*, and that as of August 29, 1984, counsel well knew that Fried, Frank was not SEACOR's counsel, nor would it become such, respecting any issues regarding this procurement because of that firm's conflict of interest with *both* parties. Thus, DLSI and its counsel knew that Mr. Reichart would not notify SEACOR of DLSI's *intended* filings, and was therefore not possessed of reasonable grounds in so thinking.

There are no significant contradictions between the factual assertions in the affidavits of Messrs. White and Reichart respecting the operative facts. Thus the court views these findings to be clear beyond cavil.

In fact, the court is compelled to note that counsel for DLSI, with the foregoing knowledge, exacerbated their conduct by misleading government counsel (see Mr. Lussier's affidavit) into believing that Stuart Reichart of Fried, Frank was SEACOR's notified and retained counsel in connection with this procurement. The gravity of the total conduct therefore clearly raises it to the level of gross deceit, and unconscionable conduct. We are constrained to find, therefore, that DLSI and its counsel well knew at the time of affixing counsels' signatures to the TRO that the facts as certified to therein were inaccurate, misleading, false, and untrue to the extent that they portended to certify, as required by RUSCC 65(f)(2), *infra*, that notice was given to the bidder (SEACOR) or *its duly appointed agent with respect to the foregoing subject matter.*

Despite the foregoing substantial probative evidence, DLSI expresses profound disbelief to the contention, and existence, of any measurable prejudice visited upon SEACOR which emanated from its lack of knowledge of this action prior to September 7, 1984. This is so, argues plaintiff, because SEACOR was given notice of the

intended split award by the Navy before the award was made, and in time for SEACOR to file for intervention in this suit. Because intervention has been granted, DLSI argues, SEACOR now has the opportunity to present its positions to this court.

It is sufficient to say that DLSI's contention misses the mark because the procedural posture of this case is that, in effect, SEACOR seeks judicial review from an *unfavorable ex parte* agency pre-award procurement decision. Case law teaches that judicial review of discretionary decisions has long been deemed to be extremely limited in scope. *Baird v. United States*, 1 Cl.Ct. 662, 664 (1983); *M. Steinthal & Sons v. Seamans*, 455 F.2d 1289, 1300 (D.C.Cir. 1971). In such agency challenges, it is well settled that plaintiff (SEACOR) has the burden to demonstrate by clear and convincing evidence that the decision of the agency has no rational basis. *International Graphics v. United States*, 4 Cl.Ct. 186, 197 (1983); *Baird*, 1 Cl.Ct. at 664; *Continental Business Enterprises, Inc. v. United States*, 196 Ct.Cl. 627, 637–638, 452 F.2d 1016 (1971); *Steinthal*, 455 F.2d at 1301. That heavy burden of proof, of course, is the prejudice SEACOR would have suffered, to the benefit of DLSI.

*Dismissal for Unclean Hands and Pursuant to RUSCC 41(b) for Failure to Comply with RUSCC 65(f)(2)*

The starting point in the court's legal analysis begins with the recognition that "[i]t is one of the fundamental principles upon which equity jurisprudence is founded, that *before a complainant can have a standing in court* he must first show that not only has he a good and meritorious cause of action, but he must come into court with clean hands." (Emphasis added.) *Keystone Co. v. Excavator Co.*, 290 U.S. 240, 244, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933); *accord Great Western Cities, Inc. v. Binstein*, 476 F.Supp. 827, 833 (N.D. Ill.1979), *aff'd*, 614 F.2d 775 (7th Cir.1979). "[The complainant] must be frank and fair

with the court, nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." *Keystone*, 290 U.S. at 244, 54 S.Ct. at 147. The factual findings, *supra*, persuasively establish that this burden has not been met. Plaintiff's counsel, although purporting to certify full compliance with RUSCC 65(f)(2) and RUSCC 11, did not (directly or indirectly) notify SEACOR of the intended filing of its application. Moreover, counsel well knew that Fried, Frank was not counsel for SEACOR nor would it act in any capacity for either party with respect to this procurement.

It is well settled that the doctrine of unclean hands "prevents a court of equity from granting relief to a plaintiff whose conduct has been unconscionable or tainted with bad faith." *Great Western Cities, Inc. v. Binstein*, 476 F.Supp. at 832. In *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), the U.S. Supreme Court commenting on the maxim, "he who comes into equity must come with clean hands," stated:

... This maxim is far more than a mere banality. It is a self-imposed ordinance that *closes the doors of a court* of equity to *one tainted with inequitableness or* bad faith relative to the matter in which he seeks relief.... That doctrine is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the *requirements of conscience and good faith*. This presupposes a refusal on its part to be "the abettor of iniquity." (Emphasis added.)

■ The unclean hands doctrine permits a court[11] to deny equitable relief "if the applicant is guilty of misconduct, fraud or bad faith toward the party ... in connection with the transaction under consideration." *Great Western Cities, Inc. v. Binstein*, 476 F.Supp. at 832. The applicant

---

11. Section 133, Federal Courts Improvement Act of 1982, P.L. 97–164 (28 U.S.C. § 1491(a)(3)) gives the Claims Court the power to grant equitable relief in contract actions prior to award.

may also be denied relief where the results induced by his conduct will be unconscionable either in the benefit to himself or the injury to others. *Earle R. Hanson & Associates v. Farmers Coop. Creamery Co.,* 403 F.2d 65, 70 (8th Cir.1968). The doctrine requires that the applicant "shall have acted *fairly and without fraud or deceit as to the controversy in issue.*" (Emphasis added.) *Precision v. Automotive,* 324 U.S. at 815, 65 S.Ct. at 997; *accord International Union etc. v. Local Union No. 589,* 693 F.2d 663, 672 (7th Cir.1982).

[Further the] maxim ... *gives wide range to the equity court's use of discretion in refusing to aid the unclean hand litigant. It is "not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion."* (Emphasis added.)

*Precision,* 324 U.S. at 815, 65 S.Ct. at 997; *Monsanto Co. v. Rohm & Haas Co.,* 456 F.2d 592, 598 (3rd Cir.1972), *cert. denied,* 407 U.S. 934, 92 S.Ct. 2463, 32 L.Ed.2d 817 (1972). Thus, the power of this court to grant the requested relief, in the exercise of its sound discretion, cannot be seriously questioned.

▮ The threshold conclusion emanating from the foregoing facts inescapably and irrefutably establishes a violation of general equitable principles sufficient to grant intervenor's motion to dismiss for unclean hands. This court must hold, therefore, that the conduct of counsel and plaintiff as delineated in the findings, *supra,* was clearly "unconscionable," reflected gross deceit, and was "tainted with inequitableness" towards SEACOR, "relative to the matter in which DLSI sought relief." Since a party is responsible for the actions and conduct of its counsel, under appropriate circumstances such as obtain here, dismissal may be entered against a party as a result of counsel's acts. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 (1962); *Denton v. Mr. Swiss of Missouri, Inc.,* 564 F.2d 236, 241 (8th Cir.1977). Here, DLSI is a sophisticated client. The acts of its counsel (one of whom was *in-house counsel*) could not be deemed to be excusable or inadvertent, nor could a less corrective sanction heal the injury done to SEACOR. *In re C.S. Crawford & Co.,* 423 F.2d 1322, 1325 (9th Cir.1970); *Lyell Theatre Corp. v. Loews Corp.,* 91 F.R.D. 97, 99 (W.D.N.Y. 1981). To hold otherwise, against this background, would be to deny the requirements of conscience and good faith as a predicate for the attainment of equitable relief.

*RUSCC 41(b):*

This court is also empowered, pursuant to RUSCC 41(b), either *sua sponte* or on defendant's motion, to dismiss for "failure to comply with these rules." While Rule 41(b) does not delineate a minimum standard of conduct sufficient to invoke a proper dismissal, we find that, at the very least, it contemplates such conduct sufficient to invoke the unclean hands doctrine as obtains here. This is particularly true because RUSCC 11, provides that "[t]he signature of an attorney ... constitutes a certificate by him that he has read the pleading ...; that to the best of his knowledge ... *formed after reasonable inquiry it is well ground in fact....*" (Emphasis added.) Given the statements of Mr. Reichart, with respect to which counsel do not contradict, plaintiff and its counsel well knew that the certification contained in DLSI's application for a TRO, *supra,* was misleading, deceptive, false, and untrue to the extent that it purported to convey compliance with RUSCC 65(f)(2).

▮ It is firmly established in case law that courts have inherent power to dismiss an action to ensure the orderly administration of justice and the integrity of its rules. Dismissal for failure to comply with the court's rules is an extraordinary step and should not be invoked when failure to comply is inadvertent or excusable. *In re C.S. Crawford & Co.,* 423 F.2d 1322, 1325 (9th Cir.1970). A court should look to the overall conduct of the litigation before imposing a dismissal under Rule 41(b). However, if lesser remedies are inadequate in a given

case, or, if a client is an active participant or instigator of an attorney's misconduct, a court should dismiss the action. *Lyell Theatre Corp. v. Loews Corp.*, 91 F.R.D. at 99. Dismissal here is justified under RUSCC 41(b) because the inference is inescapable, in view of the substantial evidence adduced, that plaintiff and its counsel knew that the certification in DLSI's TRO application was facially misleading and grossly deceptive.

The appropriateness of the dismissal of DLSI's action in this court, under the extant facts here (unclean hands), was underscored in *Precision*, 324 U.S. at 815, 65 S.Ct. at 998, where the U.S. Supreme Court stated:

> Moreover, where a suit in equity *concerns the public interest* as well as the private interests of the litigants this doctrine assumes even wider and more significant proportions. For if an equity court properly uses the maxim to withhold its assistance in such a case it not only prevents a wrongdoer from enjoying the fruits of his transgression *but averts an injury to the public.* (Emphasis added.)

*Sanctions: Dissolution of the Agreement:*

■ The agreement entered into between DLSI and the Navy to effect a split award was arrived at in the absence, and without the participation, of SEACOR under circumstances in which DLSI by its course of conduct, *supra,* led the defendant to believe that SEACOR had in fact been notified of DLSI's action in this court. Since this court cannot be the "abettor of iniquity," *supra,* said agreement is dissolved and nullified pursuant to § 1491(a)(3), 28 U.S.C., which grants this court the power to "afford complete relief on any contract claim brought before the contract is awarded ... and such equitable and extraordinary relief as it deems proper."

*Sanctions: Attorney's Fees and Costs:*

SEACOR seeks, in view of the conduct of DLSI and its counsel, *supra,* all costs and reasonable attorney's fees "incurred by SEACOR in this litigation." DLSI objects on the grounds that, in any event, SEACOR would have incurred exactly the same attorney's fees and costs, at this posture, had DLSI directly notified SEACOR prior to August 30, 1984, of its intended filings in this court.

Authority for such claims may be found in RUSCC 11, which provides in pertinent part:

> ... The signature of an attorney ... constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief *formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument* ... If a pleading ... is signed in violation of this rule, the court, *upon motion* or upon its own initiative, *shall* impose upon the person who signed it, a represented party, or both, an *appropriate sanction,* which *may* include an order to pay to the other party ... *reasonable expenses* incurred because of the filing of the pleading ..., including a *reasonable attorney's fee.* (Emphasis added.)

We view DLSI's position on attorney's fees and costs to be partly correct and partly incorrect. That is, we find that only the expenses incurred by SEACOR in connection with its motion to dismiss and for sanctions would not have been incurred had DLSI complied with RUSCC 65(f)(2). We further find that DLSI's application for a TRO was signed in violation of this rule in that (i) the certification therein was not well grounded in fact and warranted by existing law or a good faith argument, and (ii) DLSI's and counsels' belief, with respect to the foregoing, was not "formed after reasonable inquiry." Therefore, in view of DLSI's violation of RUSCC 41(b) and the provisions of RUSCC 11,[12] *supra,*

---

12. The relevant operative provisions of RUSCC 11 specifically track its companion in Rule 11,

FRCP. The Notes of Advisory Committee on Rules were amended April 28, 1983, effective

SEACOR is entitled to recover reasonable costs and attorney's fees incurred in connection with the prosecution of subject motion.

### CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. SEACOR's motion to dismiss the complaint and all pleadings in this court of DLSI is hereby GRANTED.

2. The following motions of SEACOR are also GRANTED to the extent delineated hereinabove:

   (i) dissolution of the settlement agreement between DLSI and the Navy; and

   (ii) an order directing DLSI and counsel to pay all reasonable costs and attorney's fees incurred by SEACOR in prosecuting this motion to dismiss and to impose sanctions.

3. All other motions are DENIED and/or are MOOT.

August 1, 1983. Pertinent to the issue(s) here, the notes provide, *inter alia,* that the new language is intended to reduce the reluctance of courts to impose sanctions. The new language also stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both. The relevant consideration is the knowledge of the attorney at the time the pleadings are filed.