MILLER–HOLZWARTH, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Optex Systems, Inc., Intervenor.

No. 98–576C.

United States Court of Federal Claims.

Issued for Publication May 7, 1999.[1]

---

1. This opinion was issued under seal on March 30, 1999. Pursuant to ¶ 3 of the ordering language, the parties identified protected/privileged material subject to deletion. The court by separate order issued this date denied plaintiff's motion to continue the seal pending appeal.

David R. Hazelton, Washington, DC, for plaintiff. Everett C. Johnson, Jr. and Minh N. Vu, Latham & Watkins, of counsel.

Marshall J. Doke, Jr., Dallas, TX, for intervenor. Neil E. Cannon, III and William G. Whitehill, Gardere & Wynne, of counsel.

William G. Kanellis, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant.

## OPINION

MILLER, Judge.

This matter is before the court incident to a post-award bid protest initiated by Miller–Holzwarth, Incorporated ("plaintiff"). The court's opinion, issued under seal on December 18, 1998, denied plaintiff's motion for summary judgment and granted summary judgment in favor of defendant and Optex Systems, Inc. ("intervenor"). *See Miller–Holzwarth, Inc. v. United States & Optex Systems, Inc.*, 42 Fed.Cl. 643 (1999) [issued for publication], *appeal docketed*, No. 99–

---

**2.** *See infra* note 11.

**3.** Underlying this allegation is plaintiff's assumption that, absent the alleged advice, it would have lowered the final prices of its Basic CLINs by the

5045 (Fed.Cir. Jan. 29, 1999). Intervenor's motion for sanctions seeks its reasonable expenses, including attorney's fees, expended in connection with plaintiff's claims. Intervenor asks for relief under the court's inherent powers [2] because the claims were brought in bad faith; alternatively, relief is requested under RCFC 11 because the claims were not well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law.

## FACTS

Because the December 18, 1998 opinion recites the operative facts giving rise to this bid protest, the court discusses only those facts bearing on the instant motion.

Intervenor's motion stems entirely from an alleged oral exchange that occurred between plaintiff's president, Francis J. Campolo, and Army Contract Specialist Richard Brandenburg on April 28, 1998, immediately following the pre-award meeting attended by representatives of plaintiff and the Army. Plaintiff's Verified Complaint for Declaratory and Injunctive Relief, filed on July 14, 1998, alleged that, after the meeting concluded, Mr. Brandenburg escorted Mr. Campolo to the lobby, at which time he advised Mr. Campolo "that there was no need to change [plaintiff's] proposed prices for the Basic CLINs [contract line item numbers]." Plf's Verified Complaint filed July 14, 1998, ¶ 28. The verified complaint recited that "[d]uring the same period when the Army alerted [intervenor] to the need to reduce its prices (and by how much), the Army's Contract Specialist led [plaintiff] not to reduce its prices for the Basic CLINs." *Id.* ¶ 60. Because plaintiff's final prices for its Basic CLINs would have been lower than intervenor's final prices, but for Mr. Brandenburg's advice not to change the prices of its Basic CLINs, plaintiff alleged that Mr. Brandenburg's remarks constituted unfair and improper preferential treatment in favor of intervenor.[3] *See id.*

---

same percentage that it lowered its final prices for the Option CLINs and the First Article Testing ("FAT") CLINs. As will be discussed, Mr. Campolo's deposition testimony revealed that

Mr. Campolo's second declaration, which was submitted in support of plaintiff's opposition to Defendant's Motion for a Protective Order Quashing Certain Discovery, described the particulars of his April 28, 1998 encounter with Mr. Brandenburg. "Mr. Brandenburg stated openly that [plaintiff's] prices for the Base CLINs were 'okay,' suggesting that there was no need for [plaintiff] to change the prices for the Base CLINs at best and final offer ('BAFO')." Declaration of Francis J. Campolo, Aug. 17, 1998, ¶ 5. According to Mr. Campolo, shortly after his encounter with Mr. Brandenburg, Mr. Campolo called Vincent Cervellieri, an outside consultant for plaintiff, and David R. Hazelton, plaintiff's attorney, to discuss Mr. Brandenburg's comments about plaintiff's pricing.[4] *See id.* ¶ 6. Mr. Campolo also reiterated the position set forth in plaintiff's verified complaint, to wit, that if plaintiff had "reduced its prices for the Base CLINs by the same percentage that it had lowered its option CLINs, [plaintiff's] total price would have been lower than [intervenor's]." *Id.* ¶ 13a.

Defendant and intervenor deposed Mr. Campolo on October 21, 1998. In response to questions from counsel from intervenor regarding the substance of the April 28, 1998 conversation, Mr. Campolo reconfirmed that, consistent with his declaration and plaintiff's verified complaint, Mr. Brandenburg advised that plaintiff need not reduce the prices for its Basic CLINs. Mr. Campolo then stated, for the first time on the record, that Mr. Brandenburg suggested that plaintiff reduce its prices for the Option CLINs by 50%.[5]

Mr. Campolo also explained that Mr. Brandenburg's comments influenced his decision, for purposes of BAFO, to leave unchanged the prices of plaintiff's Basic CLINs and to reduce the prices of plaintiff's Option CLINs by 50%. Also, for the first time on the record, Mr. Campolo explained that, after Mr. Brandenburg had instructed Mr. Campolo about his prices and returned to the building, Mr. Brandenburg reappeared to inform Mr. Campolo that "I didn't say that," or similar words to that effect. Deposition of Francis J. Campolo, Oct. 21, 1998, at 65.

Plaintiff filed its motion for summary judgment on November 2, 1998. In its statement of uncontroverted facts, filed simultaneously, plaintiff pressed the position that Mr. Brandenburg's comments regarding plaintiff's base and option year prices "had the effect of keeping [plaintiff's] base year prices the same at BAFO." Plf's Statement of Uncontroverted Fact No. 48, filed Nov. 2, 1998. Moreover, "[h]ad [plaintiff] lowered its base year prices by the same percentage that it lowered its option year prices, it would have had a lower price at BAFO than [intervenor]." *Id.*

Intervenor cross-moved for summary judgment, contending that plaintiff's demand for permanent equitable relief should be denied because, *inter alia,* plaintiff had "unclean hands." Interv's Br. filed Nov. 18, 1998, at 7–15. Specifically, intervenor argued that plaintiff had attempted to use Mr. Brandenburg's comments to gain an unfair advantage over its competitors; that plaintiff had relied on source selection information to manipulate

Mr. Brandenburg advised plaintiff to lower its prices for its Option CLINs by 50%.

**4.** Mr. Cervellieri executed a declaration on August 17, 1998, in which he states:
2. At the end of April 1998 or the beginning of May 1998 ... Frank Campolo and I spoke on the telephone. During the course of our conversation, Mr. Campolo told me that [Mr. Brandenburg] had told him that [plaintiff's] prices for its base CLINS were okay and that there was no need to change them. I also recall Mr. Campolo telling me that the above comments were unsolicited.

**5.** The following is the exchange during which Mr. Campolo first made reference to Mr. Brandenburg's suggestion that plaintiff should reduce the prices for its Option CLINs by 50%:

Q Paragraph five of your declaration filed in this case states that you and Mr. Brandenburg stopped in the lobby where you said Mr. Brandenburg raised the issue of Miller–Holzwarth prices. How did he raise that issue?
A Mr. Brandenburg as we were saying goodbye made reference to our pricing.
Q What exactly did Mr. Brandenburg say?
A That our prices were okay. That the option year prices were too high and we ought to reduce the amount of increase, as I recall cutting it by half or 50 percent.
Q I'm sorry. Reduce what by 50 percent?
A The amount of increase in the option years. Deposition of Francis J. Campolo, Oct. 21, 1998, at 56–57.

its prices at BAFO, in violation of the Procurement Integrity Act, 41 U.S.C.A. § 423(b) (West Supp.1998); and that Mr. Campolo understood that it was improper to obtain information that related to the ranking of plaintiff's competitors prior to contract award.

Plaintiff's final brief evinces a conspicuous shift in legal tactics. Retreating from its prior argument that Mr. Brandenburg's comments effected unfair and improper preferential treatment in favor of intervenor, this brief recites that "[plaintiff] does not rely on the conversation for its motion." Plf's Br. filed Dec. 1, 1998, at 30–31. Contrary to Mr. Campolo's deposition testimony, plaintiff now maintained that Mr. Campolo did not interpret "Mr. Brandenburg's remark to mean that his base price was the lowest" and, ultimately, that "there was nothing illicit about the conversation." *Id.* at 32–33.

In its cross-motion for summary judgment, defendant insisted that the facts uncovered in discovery constituted compelling evidence that Mr. Brandenburg said nothing illicit to Mr. Campolo about price in their conversation. The court declined to resolve on summary judgment the issues involving the conversation between Messrs. Brandenburg and Campolo because this position was directly at odds with plaintiff's, notwithstanding plaintiff's decision to retrench from an allegation so substantial a part of its pleadings in its reply brief.

### DISCUSSION

The lynchpin of intervenor's motion is that Mr. Campolo knowingly obtained source selection information from Mr. Brandenburg in violation of the Procurement Integrity Act, 41 U.S.C.A. § 423(b) (West Supp.1998) (the "Act" or "PIA"). Mr. Campolo's deposition testimony indicates that Mr. Brandenburg

instructed Mr. Campolo that the prices of plaintiff's Basic CLINs were "okay," and that plaintiff ought to reduce the prices of its Option CLINs by 50%. Intervenor interprets this information as "reveal[ing] the proposed prices of the other competitors, the Army's price evaluation of proposals, and the ranking of proposals or competitors," Interv's Br. filed Jan. 13, 1999, at 10, and charges that Mr. Campolo knew that it was improper to have this information yet failed to timely disclose it.[6] Intervenor points out that Mr. Campolo signed a certificate of procurement integrity obligating him to report violations of the Act, arguing that any reasonable person would have construed Mr. Brandenburg's retraction immediately following the exchange as evidence that the information conveyed was improper.

Buttressed by this factual scenario, intervenor constructs two independent arguments to demonstrate that plaintiff, as well as its attorney, acted in bad faith. First, intervenor contends that plaintiff abused the procurement system and, second, that plaintiff abused the judicial system. Either of these contentions, if persuasive, would support the imposition of sanctions under the court's inherent powers or pursuant to RCFC 11, according to intervenor.

Intervenor's argument that plaintiff violated the procurement system rests on the allegation that Mr. Campolo's unfolding disclosure of his exchange with Mr. Brandenburg was motivated by an intent to gain an unfair advantage over plaintiff's competitors. Citing several cases pronouncing the importance of competition and fairness in public procurements, *see, e.g., Board of County Comm'rs, Wabaunsee County v. Umbehr,* 518 U.S. 668, 683–84, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996); *Keco Indus., Inc. v. United States,*

---

**6.** The PIA precludes a person from filing a protest against the award or proposed award of a contract alleging that source selection information was improperly obtained in violation of subsection (b), "unless that person reported to the Federal agency responsible for the procurement, no later than 14 days after the person first discovered the possible violation, the information that the person believed constitutes evidence of the offense." 41 U.S.C.A. § 423(g). Intervenor contends that Mr. Campolo failed to report the

possible violation within the 14–day window required by subsection (g); in any event, Mr. Campolo should have revealed the entirety of Mr. Brandenburg's instructions regarding plaintiff's option prices at the outset of its protest. Mr. Campolo confirmed during his deposition that, prior to this procurement, he signed and submitted to the Government a certificate of procurement integrity and that he had read and was familiar with the PIA. *See* Campolo Dep. at 105–06.

203 Ct.Cl. 566, 574–575, 492 F.2d 1200, 1203–04 (1974); *United States v. Brookridge Farm, Inc.*, 111 F.2d 461, 463 (10th Cir. 1940),[7] intervenor argues that plaintiff's conduct was nothing short of "unsuccessful cheating," insofar as Mr. Campolo knowingly obtained source selection information, failed to report it, and altered plaintiff's prices at BAFO in reliance upon such information. Interv's Br. filed Jan. 13, 1999, at 13.

The centerpiece of intervenor's claim that plaintiff's conduct constitutes a bad-faith abuse of the judicial system is the charge that plaintiff misled the court, defendant, and intervenor throughout the course of this litigation. Intervenor argues that, if plaintiff had disclosed Mr. Brandenburg's remarks in their entirety at the outset of its protest, the case would have ended promptly upon motions by defendant or intervenor based on plaintiff's unclean hands. "Mr. Campolo deliberately mischaracterized [plaintiff's] reduction of option prices at BAFO in his August 17, 1998, Declaration as 'typical' at BAFO … when he knew the real reason was Mr. Brandenburg's instructions to reduce them by half." Interv's Br. filed Jan. 13, 1999, at 14.

Defendant's response, filed in support of intervenor's motion, complements intervenor's motion in most respects. Defendant concludes that plaintiff's pleadings and sworn testimony permit only three conclusions: first, that "Mr. Campolo lied under oath about Mr. Brandenburg's remarks to him on April 28, 1998"; second, that plaintiff's attorney "Mr. Hazelton failed to make a reasonable inquiry into the merit of a claim predicated upon his client's reliance on inside pricing information"; and third, that "[plaintiff] and/or Mr. Hazelton brought the claim for an improper purpose, i.e., to win the pro-

curement based upon Mr. Campolo's receipt of what was believed to be competitors' pricing information." Def's Br. filed Feb. 16, 1999, at 9.

### 1. *Whether the disputed facts of record preclude award of attorney's fees*

As a threshold matter, plaintiff contends that intervenor's motion for sanctions is unsupported by the record. The court concluded in its decision on the merits that because the issues attendant to the exchange between Messrs. Campolo and Brandenburg remained in total dispute among the parties, resolution of the matter on summary judgment was not appropriate. *See Miller–Holzwarth*, 42 Fed.Cl. at 659. Plaintiff also notes that, throughout these proceedings, defendant has intoned that nothing illicit transpired between Mr. Campolo and Mr. Brandenburg during their conversation on April 28, 1998.

To assess the strength of intervenor's and defendant's arguments, the court need not consider whether the alleged conversation actually occurred, or whether the content of this conversation is undisputed. Intervenor's and defendant's briefs are not based on the actual content of Mr. Brandenburg's comments to Mr. Campolo; rather, they draw from plaintiff's pleadings and filings and Mr. Campolo's sworn declaration and testimony. The court's opinion on the merits found that the actual content of this conversation could not be used to advance the arguments of plaintiff, defendant, or intervenor. However, the propriety of sanctions under these circumstances turns on an assessment of the declarations, testimony, and averments of plaintiff, Mr. Campolo, and plaintiff's counsel.[8]

---

**7.** To support its argument that plaintiff's conduct reflects a pattern of receiving source selection or competition sensitive information without disclosing it, intervenor reiterates several instances in which Mr. Campolo allegedly obtained source selection information without disclosing it to the Government. *See* Campolo Dep. at 35–36, 38–39. Because these alleged improprieties did not occur in connection with the instant litigation, the court shall not consider them.

**8.** Plaintiff prefaces its opposition by asserting that "[intervenor's] motion for sanctions effec-

tively asks the Court to reverse its prior holdings by ruling that [Mr. Brandenburg] in fact provided source selection information to [plaintiff] in violation of the Procurement Integrity Act …. The record simply does not permit the factual findings on which [intervenor's] motion is based." Plf's Br. filed Feb. 16, 1999, at 1. To the contrary, intervenor is not requesting that the court render factual findings or legal conclusions to the effect that Mr. Campolo obtained illegally source selection information. Intervenor bases its motion "exclusively on [p]laintiff's pleadings

Despite the nominal impact of the underlying facts upon the instant motion, plaintiff would urge a plausible and innocent explanation for the alleged comments uttered by Mr. Brandenburg. Plaintiff suggests that the alleged comments may not have referred to the prices of plaintiff's competitors, but "could have been in reference to the agency's internal estimates or prices from prior procurements." Plf's Br. filed Feb. 16, 1999, at 6. Section 15.404–1(b)(2) of the Federal Acquisition Regulation (the "FAR"), 48 C.F.R. § 15.404–1(b)(2) (1998), specifies the means by which the Government may examine and evaluate proposed prices received in connection with a solicitation. This provision of the FAR permits the Government to compare, *inter alia,* "previously proposed prices and contract prices with current proposed prices," as well as "proposed prices with independent Government cost estimates."

The motivation behind Mr. Brandenburg's remarks, if any, to Mr. Campolo, to the extent that it is discernable, does not bear upon this matter. Whether Mr. Brandenburg vocalized a comparison of plaintiff's prices and the Army's internal estimates, plaintiff's prices and prices from prior procurements, or even plaintiff's prices and intervenor's prices [9] is of little consequence. Because the facts surrounding Mr. Brandenburg's comments remain in total dispute, imputing an agenda to Mr. Brandenburg based on mere speculation will not assist plaintiff's case. Solely at issue is the manner in which Mr. Campolo construed Mr. Brandenburg's alleged comments, and how Mr. Campolo and plaintiff's counsel sponsored those comments in the course of this litigation. Before the court are plaintiff's pleadings and filings and Mr. Campolo's sworn declaration and testimony. This record constitutes a sufficient factual foundation to determine whether sanctions are warranted.[10]

## 2. *Whether the court has the power to award attorney's fees*

■ As a preliminary matter, plaintiff questions the court's ability to award attorney's fees. Citing Congress' failure to include a provision authorizing expressly the award of attorney's fees in the statutory revisions recently expanding the court's jurisdiction over post-award bid protests, plaintiff relies on *Concept Automation, Inc. v. United States,* 41 Fed.Cl. 361, 364 n. 1 (1998). Plaintiff interprets this case as holding that "a protestor apparently could no longer recover attorney's fees because the 1996 Act establishing the Court's new protest jurisdiction did not expressly authorize that type of relief." Plf's Br. filed Feb. 16, 1999, at 8. Plaintiff is mistaken.

The court's power to impose sanctions derives from an express statutory grant. Congress authorized the Court of Federal Claims to hold its proceedings in accordance with such rules of practice and procedure as it may prescribe. *See* 28 U.S.C. § 2503(b) (1994). The court may, in its discretion, punish by fine or imprisonment such contempt of its authority as "misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice," or "misbehavior of any of its officers in their official transactions." 28 U.S.C. § 2521(b)(1), (2) (1994).

The absence of an express provision in the 1996 amendments expanding the Court of Federal Claims' bid protest jurisdiction did not restrict the court's ability to award attor-

---

and Mr. Campolo's sworn testimony." Interv's Br. filed Feb. 23, 1999, at 2. The history and present posture of this litigation suggest that only Messrs. Campolo and Brandenburg will ever know the actual content of their April 18, 1998 alleged conversation.

9. FAR § 15.404–1(b)(2)(i) permits the Government to evaluate an offeror's price by comparing each of the "proposed prices received in response to the solicitation."

10. Plaintiff argues that, "to the extent that the record permits any relevant finding of fact, it is

that the Contracting Officer provided no source selection information to [plaintiff]." Plf's Br. filed Feb. 16, 1999, at 4. Plaintiff reasons that Mr. Brandenburg's comments could not have the meaning imputed by intervenor because, assuming that Mr. Campolo did follow Mr. Brandenburg's instructions, plaintiff's price at BAFO became less favorable as a result. For the reasons stated above, the court's analysis is based on plaintiff's interpretation of, and response to, Mr. Brandenburg's remarks, as reflected in the record.

ney's fees for misconduct occurring in connection with a post-award bid protest.[11] The jurisdictional provision on which plaintiff relies states: "To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C.A. § 1491(b)(2) (West Supp.1998). Insofar as this language restricts the award of attorneys' fees as relief for a violation of a statute or regulation in connection with a procurement or a proposed procurement, plaintiff is correct. However, this provision, and those provisions enabling the court to prescribe rules for the conduct of its business are not mutually exclusive. That plaintiff did not prevail in its protest is not the impetus of intervenor's motion for sanctions. It is plaintiff's alleged misconduct, along with that of its attorney in the course of prosecuting plaintiff's protest, that propel intervenor's motion.

The court finds curious plaintiff's reliance on *Concept Automation.* More than once Chief Judge Smith acknowledged that, "pursuant to the 1996 amendments to the Tucker Act, bid protest damages are specifically not available in post-award bid protest actions brought in the Court of Federal Claims." 41 Fed.Cl. at 371 n. 12; *see also id.* at 364 n. 1. Nonetheless, after concluding that the Government conducted itself in an arbitrary and capricious manner in the course of a procurement, the court awarded plaintiff its protest costs, including attorney's fees, based on an implied contract theory. The court emphasized "the unique nature of the facts in this case," and stated expressly that its decision did not imply a cause of action to recover attorneys' fees "into every implied-in-fact contract that the government might breach." *Id.* at 371. *Concept Automation* did not contemplate misconduct beyond the scope of actions involved in the contract award, as is alleged here. Thus, the case does not advance plaintiff's argument, but it does describe an unusual situation in which a protestor was allowed to recover its protest costs under an alternative theory, in the face of a statutory scheme expressly excluding such costs.

The Supreme Court has recognized that the courts of the United States may "prescribe rules for the conduct of their business, provided such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." *United States v. Hvass,* 355 U.S. 570, 575, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958) (quoting 28 U.S.C. § 2071.) RCFC 11 establishes the grounds for the imposition of sanctions upon a party or its attorney, stating in pertinent part:

The signature of an attorney or party constitutes a certificate by the attorney or party that the attorney or party has read the pleading, motion, or other paper; that to the best of the attorney's or party's knowledge, information, and belief formed after a reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

11. In its amended form, the provision prescribing the court's bid protest jurisdiction states, in pertinent part:
   Both the Unites [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.
28 U.S.C.A. § 1491(b)(1) (West Supp.1998) (footnotes omitted).

RCFC 11 is patterned after the 1983 version of Fed.R.Civ.P. 11. *See Judin v. United States,* 110 F.3d 780, 783 (Fed.Cir.1997). In 1993 the Federal Rules of Civil Procedure were amended, thereby affording courts greater discretion by instructing that sanctions "may" be imposed if a court determines that a violation has occurred, RCFC 11 has not been amended *ensuite,* still retaining the language that the court "shall" impose sanctions upon the finding of a violation. *See Persyn v. United States,* 35 Fed.Cl. 708, 711–12 (1996); *Judin v. United States,* 34 Fed.Cl. 483, 489 n. 6 (1995), *vacated and remanded,* 110 F.3d 780 (Fed.Cir.1997); *see also Refac Int'l, Ltd. v. Hitachi, Ltd.,* 921 F.2d 1247, 1257 (Fed.Cir.1990). This significant difference in judicial discretion notwithstanding, "[i]n interpreting Rule 11, RCFC, '[p]recedent illuminating [Fed.R.Civ.P. 11] is applicable.'" *Judin,* 110 F.3d at 784 (quoting *Doe v. United States,* 16 Cl.Ct. 412, 414 (1989)).[12] Out of an abundance of caution, in applying the court's current rule, this court's ruling would be the same under either mandatory or permissive language.

### 3. *Whether plaintiff's conduct is sanctionable under Rule 11*

Plaintiff contends that sanctions may not be imposed unless intervenor "*at a minimum,* show[s] that it was objectively unreasonable for [plaintiff] to conclude under the circumstances that it was not barred by a known alleged PIA violation." Plf's Br. filed Feb. 16, 1999, at 10. Emphasizing that the standard for sanctions under RCFC 11 does not turn on whether the legal theory espoused in a filing prevails, plaintiff pronounces that, "[e]ven if erroneous, a legal posture does not violate Rule 11 unless it is 'unreasonable from the point of view both of existing law and of its possible extension, modification, or reversal.'" *CJC Holdings, Inc. v. Wright & Lato, Inc.,* 989 F.2d 791, 793 (5th Cir.1993) (quoting *Smith Int'l, Inc. v. Texas Commerce Bank,* 844 F.2d 1193, 1200, (5th Cir.1988)).

■ The primary purpose of RCFC 11 is to discourage baseless filings and "streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The central goal of Rule 11 is deterrence. *Id.* A court should not compromise judicial integrity by entertaining groundless pleadings. *See Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1180 (D.C.Cir. 1985). Moreover, Rule 11 applies to every written paper filed with the court. *See* RCFC 11 (bearing upon "a pleading, motion, or other paper" signed in violation of the Rule); *Westmoreland,* 770 F.2d at 1174.

■ The Advisory Committee Notes expounding on the 1993 amendments to Fed. R.Civ.P. 11 impart that "[t]he rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions"; moreover, the rule "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable ...." The Supreme Court has confirmed that Rule 11 imposes an objective standard of reasonable inquiry, which does not mandate a finding of bad faith. *See Chambers v. NASCO,* 501 U.S. 32,

---

12. Intervenor notes that RCFC 11 is not the exclusive source of the court's power to sanction misconduct. The Advisory Committee Notes to the 1993 Amendments to Fed.R.Civ.P. 11 state:

Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. *See Chambers v. NASCO,* [501] U.S. [32, 111 S.Ct. 2123, 115 L.Ed.2d 27] (1991). Chambers cautions, however, against reliance

upon inherent powers if appropriate sanctions can be imposed under provisions such as Rule 11, and the procedures specified in Rule 11— notice, opportunity to respond, and findings— should ordinarily be employed when imposing a sanction under the court's inherent powers.

The court in its discretion, declines to address intervenor's argument that the court can rely on its inherent powers to sanction plaintiff and its attorney. The power exists, but the precedent recognizing its exercise does not. *See M.A. Mortenson Co. v. United States,* 996 F.2d 1177, 1184 n. 5 (Fed.Cir.1993) (declining expressly to "address the issue of whether the [Court of Federal Claims] has the inherent power to sanction ... for abuse of the litigative process.").

47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The Court noted that "Rule 11 was amended in 1983 precisely because the subjective bad-faith standard was difficult to establish and courts were therefore reluctant to invoke it as a means of imposing sanctions." *Id.* at 47 n. 11, 111 S.Ct. 2123.

Plaintiff views its conduct as objectively reasonable under the circumstances because the alleged remarks of Mr. Brandenburg do not fall within the statutory definition of source selection information. The PIA defines the term "source selection information," as follows:

(A) Bid prices submitted in response to a Federal agency solicitation for sealed bids, or lists of those bid prices before public bid opening.

(B) Proposed costs or prices submitted in response to a Federal agency solicitation, or lists of those proposed costs or prices.

(C) Source selection plans.

(D) Technical evaluation plans.

(E) Technical evaluations of proposals.

(F) Cost or price evaluations of proposals.

(G) Competitive range determinations that identify proposals that have a reasonable chance of being selected for award of a contract.

(H) Rankings of bids, proposals, or competitors.

(I) The reports and evaluation of source selection panels, boards, or advisory councils.

(J) Other information marked as "source selection information" based on a case-by-case determination by the head of the agency, his designee, or the contracting officer that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates.

41 U.S.C.A. § 423(f)(2). Arguing that Mr. Brandenburg's comments, as alleged by Mr. Campolo, do not "fit neatly into any of the statutory definitions," Plf's Br. filed Feb. 16, 1999, at 12, plaintiff dismisses these comments as not reflecting the "reality of the procurement," *id.* at 13, *i.e.*, Mr. Brandenburg actually conveyed false information regarding plaintiff's pricing.[13] In that no controlling precedent has considered an offeror's receipt of purportedly false information, plaintiff sees no basis for the imposition of sanctions under RCFC 11.

█ The imposition of sanctions should not discourage advocacy of a legal theory within the context of a body or area of law that is unclear, unaddressed by the appellate courts or the Supreme Court, or that remains largely undeveloped. *See, e.g., Milwaukee Concrete Studios v. Fjeld Mfg. Co., Inc.,* 8 F.3d 441, 448–49 (7th Cir.1993); *CJC Holdings,* 989 F.2d at 794. This, however, is not the conduct with which plaintiff is charged. Intervenor and defendant do not contend that plaintiff extended an argument beyond the bounds of reasonableness; they claim that plaintiff advanced a theory, motivated by improper purposes, without timely disclosing material facts that undercut it. Based on plaintiff's filings and Mr. Campolo's declaration and testimony, it is evident that plaintiff was not merely pressing an innovative theory in an uncharted area of the law.

Objective consideration of Mr. Campolo's declaration and testimony compels a finding that Mr. Campolo obtained source selection information from Mr. Brandenburg. A remark to the effect that an offeror's prices are "okay" is not unduly suggestive, revealing at most that the offeror's prices may be reasonable. However, a direct, unqualified instruction to lower a particular segment of an offeror's prices by a specific percentage is far more revealing, and more suspect, re-

---

13. Plaintiff's argument that sanctions are inappropriate because no court has yet to address whether false information constitutes source selection information is inapposite. Plaintiff's theory is that, despite the allegation that plaintiff followed Mr. Brandenburg's instructions with regard to its prices, the information, in fact, did not advance plaintiff's position relative to other offerors. Plaintiff thus concludes that Mr. Brandenburg's intent could not have been to provide plaintiff information from which it could benefit unfairly. To render an objective assessment of Mr. Brandenburg's remarks, and the impact of those remarks upon plaintiff and its counsel, the court need not divine Mr. Brandenburg's subjective intent. Moreover, intervenor's motion does not address Mr. Brandenburg's intent, but the intent of Mr. Campolo, of which there is ample evidence.

gardless of the manner in which the comment is construed. The circumstances in which Mr. Brandenburg proffered his alleged remarks underscore their impropriety. Mr. Brandenburg allegedly approached Mr. Campolo after the conclusion of official discussions during which Messrs. Campolo and Brandenburg readily could have addressed the issue of plaintiff's prices. Rather than confront plaintiff's pricing in this venue, Mr. Brandenburg allegedly waited until he was alone with Mr. Campolo to make his remarks, which were abruptly retracted, apparently after realizing that their content may have been inappropriate.

Regardless of how Mr. Campolo actually construed Mr. Brandenburg's remarks, a reasonable contractor with experience similar to that of Mr. Campolo should have concluded that Mr. Brandenburg's instructions, considering the circumstances in which they were proffered, constituted source selection information requiring complete and immediate disclosure. Moreover, plaintiff's selective disclosure of information evinces a level of candor far below that required by RCFC 11. The content of the April 28, 1998 conversation between Messrs. Campolo and Brandenburg was not disclosed fully until Mr. Campolo's deposition on October 21, 1998. Until that date Mr. Campolo, and plaintiff's counsel, to the extent that the latter was so informed, had disclosed only that Mr. Brandenburg's remarked that plaintiff's prices for its Basic CLINs were "okay." Plaintiff fails to provide a satisfactory explanation as to why it delayed disclosure of the full extent of Mr. Brandenburg's alleged comments in its pleadings or in the declaration executed by Mr. Campolo prior to his deposition. The reasonable inference is that either Mr. Campolo or plaintiff's counsel was aware that Mr. Brandenburg's instruction to lower its prices approximated the statutory definition of source selection information, so that disclosure of this information in plaintiff's pleadings was inconsistent with plaintiff's argument that it was misled by the Government not to change its prices.

The reasonableness of the foregoing conclusion is supported by the marked inconsistencies in plaintiff's pleadings, testimony, and conduct. Considered collectively, the record supports intervenor's and defendant's contention that plaintiff misled the court and advanced a claim for an improper purpose. Moreover, evidence is present that plaintiff's attorney of record violated the certification requirement of RCFC 11 by interposing a claim that he knew to be suspect, or should have known to be suspect, had he conducted a reasonable inquiry into the material facts.

█ It is well recognized that misrepresentations proffered under oath can support the imposition of sanctions under Rule 11. *See Persyn*, 35 Fed.Cl. at 725 ("There are minimum standards such that all conduct cannot be excused, including misleading the court and asserting claims based on nothing more than wishful thinking."); 5A *Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure*, § 1335, at 66–67 (2d ed. 1990) ("To state as a fact what is at best a guess and a hope, or is an extravagant inference based on a vague recollection is a violation of the rule.").

█ In his deposition on October 21, 1998, Mr. Campolo revealed the following to intervenor's counsel:

Q Did you interpret [Mr. Brandenburg's] comment that your prices were okay to mean that they probably were lower than the other competitors?

A That was my immediate interpretation of what those comments were, yes.

. . . .

Q Did you lower your option prices based on Mr. Brandenburg's comments to you?

A I lowered the option prices because when we got all finished with submitting a proposal, that's the numbers that I changed.

Q Well, did you—

A And I was obviously influenced by that bit of information.

Q And did that same bit of information cause you not to lower your base prices?

A That was a factor in determining the final prices submitted in the proposal.

Campolo Dep. at 67, 100.

Directly contradicting this testimony, plaintiff's reply brief in support of its motion

for summary judgment states that Mr. Campolo did not construe "Mr. Brandenburg's remark to mean that his base price was the lowest" and that "there was nothing illicit about the conversation." Plf's Br. filed Dec. 1, 1998, at 32–33. Pertinent portions of Mr. Campolo's deposition testimony are recounted in greater detail in the court's December 18, 1998 opinion. Also in its reply, plaintiff stated that "[plaintiff] does not rely on the conversation for its motion." *Id.* at 30–31. The court surmised that plaintiff's decision to retrench from an allegation so substantial a part of its pleadings was likely a response to intervenor's cross-motion for summary judgment in which it argued plaintiff's potential violations of the PIA. *See Miller–Holzwarth*, 42 Fed.Cl. at 659.

By plaintiff's own record, the following is true: (1) Mr. Campolo interpreted Mr. Brandenburg's remarks to suggest that plaintiff's prices for its Basic CLINs were lower than that of its competitors; (2) Mr. Campolo left unchanged the price of its Basic CLINs and reduced the prices of its Option CLINs in accordance with Mr. Brandenburg's instructions; (3) Mr. Campolo conveyed the substance of Mr. Brandenburg's remarks to plaintiff's consultant and attorney; (4) at the post-award debriefing on May 28, 1998, after learning that plaintiff did not prevail in the solicitation because plaintiff's prices were higher than those of intervenor, neither Mr. Campolo nor his attorney indicated to the Army that, by his remarks, Mr. Brandenburg affirmatively had misled plaintiff to submit an uncompetitive bid; (5) prior to Mr. Campolo's deposition on October 21, 1998, plaintiff submitted to the court numerous filings, including, but not limited to, plaintiff's complaint, the declaration of plaintiff's president, and proposed findings of fact setting forth only that portion of Mr. Brandenburg's remarks most helpful to plaintiff's case; and (6) after Mr. Campolo's deposition, and specifically, after confronting allegations that plaintiff violated the PIA, plaintiff dropped its

claim to the extent that Mr. Brandenburg's remarks on April 28, 1998, misled plaintiff to submit uncompetitive prices at BAFO.

Plaintiff's testimony, filings, and conduct render plaintiff's original averment, *i.e.*, that its bid effectively was sabotaged by the remarks of Mr. Brandenburg, simply evanescent. In his declaration executed on August 17, 1998, Mr. Campolo stated that plaintiff reduced the prices of plaintiff's Option CLINs "as typical at BAFO." Campolo Decl. ¶ 7. Mr. Campolo's subsequent deposition testimony reveals that he reduced the prices of plaintiff's Option CLINs per Mr. Brandenburg's instructions. Based on Mr. Campolo's own testimony, he acted on what he believed to be competitive bid information, failed to prevail in the solicitation, and then protested the award without disclosing material facts that would have exposed his misconduct. That plaintiff no longer relied on its claim that it was misled by Mr. Brandenburg's remarks, following Mr. Campolo's illuminating deposition, only underscores plaintiff's self-serving tactic.

Sanctions must be imposed under RCFC 11 when the court is subjected to a filing for an improper purpose. In the instant case, it is evident that plaintiff's verified complaint and Mr. Campolo's sworn declaration of August 17, 1998, included only those facts necessary to advance a claim that was encumbered by impropriety. Plaintiff introduced a pleading that was not well grounded in fact or law, and plaintiff pressed a legal position motivated by a suspect purpose until it was no longer defensible. *See In re Kunstler*, 914 F.2d 505, 518 (4th Cir.1990) (determining existence of improper purpose by assessing whether pleading was well grounded in fact and law); *see also Persyn*, 35 Fed.Cl. at 725 (imposing sanctions for misrepresentations pressed upon court). Plaintiff effectively misled the court, defendant, and intervenor and, in doing so, abused the judicial system and protracted the litigation.[14] This is pre-

---

14. In its reply brief, intervenor set forth the various positions advanced by plaintiff:

> Plaintiff's positions in this case have now run the entire gamut from (a) Mr. Brandenburg made statements that misled [plaintiff] into not changing its prices, to (b) Mr. Brandenburg

may not have made the statements, to (c) Mr. Brandenburg made the statements but Plaintiff did not need them for its case, to (d) Mr. Brandenburg's statements didn't mean what Mr. Campolo said they did, to (e) Mr. Brandenburg's statements were plausible, innocent,

cisely the type of conduct that RCFC 11 was adopted to deter.

### 4. Whether the conduct of plaintiff's attorney is sanctionable under RCFC 11

■ "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell,* 496 U.S. at 393, 110 S.Ct. 2447. Sanctions under RCFC 11 are appropriate when "it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law ...." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). In order to determine "improper purpose," counsel's conduct must be assessed by an objective standard of reasonableness rather than by subjective intent. *See Stevens v. Lawyers Mut. Liab. Ins. Co. of North Carolina,* 789 F.2d 1056, 1060 (4th Cir.1986); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 832 (9th Cir.1986). Correlatively, to determine whether an attorney's pre-filing inquiry was reasonable, the court must consider all the circumstances of the case. *See Cooter & Gell,* 496 U.S. at 401, 110 S.Ct. 2447. The signature of an attorney on a paper filed with the court is a representation of the "truth and reasonableness of the document." *Business Guides, Inc. v. Chromatic Communications Enters., Inc.,* 498 U.S. 533, 547, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991). The reasonableness of the attorney's inquiry is judged by an objective standard of "reasonableness under the circumstances." *Id.* at 551, 111 S.Ct. 922. Counsel cannot avoid the imposition of sanctions merely because it operates "under the guise of a pure heart and empty head." *Zuniga v. United Can Co.,* 812 F.2d 443, 452 (9th Cir.1987).

■ In its brief supporting intervenor's motion, defendant contends that plaintiff's counsel "should ... have known that a claim

of unequal treatment would fail where the injury was caused by the plaintiff's attempt to take advantage of unequal treatment." Def's Br. filed Feb. 16, 1999, at 17. In other words, defendant questions counsel's judgment, or lack thereof, in pressing a claim supported by facts implicating his client in potentially illegal conduct. Defendant also charges that plaintiff's counsel was not forthcoming regarding the propriety of plaintiff's claim in the face of direct questions from the court.

Defendant relies primarily on *Dyn Logistics Services, Inc. v. United States,* 6 Cl.Ct. 353 (1984), in which the court imposed sanctions in favor of an intervenor in a pre-award bid protest. The protestor certified in a filing to the court that its attorneys had given notice to the low bidder that of the protestor's intent to file a temporary restraining order ("TRO"). After determining that the notice was inadequate, the court found that "DLSI and its counsel well knew at the time of affixing counsels' signatures to the TRO that the facts as certified to therein were inaccurate, misleading, false, and untrue to the extent that they portended to certify, as required by RUSCC 65(f)(2) ... that notice was given to the bidder ...." *Id.* at 359. The court not only denied the protestor its request for injunctive relief based on, *inter alia,* the protestor's unclean hands, but awarded expenses to the bidder that "would not have been incurred had DLSI complied with RUSCC 65(f)(2)." *Id.* at 362.

Mr. Campolo testified in his deposition that, shortly after his exchange with Mr. Brandenburg on April 28, 1998, he called Mr. Cervellieri, his consultant, and Mr. Hazelton, his attorney. "I called the attorney. We had had a number of conversations concerning the solicitation. And I guess there was some concern that the statement was made in the fashion that it was made and then retracted ...." Campolo Dep. at 67. In its statement of uncontroverted facts filed in support of its motion for summary judgment, plaintiff states: "Mr. Campolo related Mr. Brandenburg's comments about pricing to his attorney, David Hazelton ...." Plf's State-

---

reasonable, and proper, to (f) Mr. Brandenburg's statements were false.

Interv's Br. filed Feb. 23, 1999, at 9–10 (citations omitted).

ment of Uncontroverted Fact No. 49, filed Nov. 2, 1998. The "comments" to which plaintiff refers included statements that plaintiff's "base year prices were 'okay,'" and that plaintiff "should decrease the annual increases in the option years by half." *Id.* No. 47. This filing, signed and submitted to the court by Mr. Hazelton, as plaintiff's attorney of record, establishes that Mr. Hazelton was aware of the entirety of Mr. Brandenburg's alleged comments shortly after April 28, 1998. It convincingly shows that Mr. Campolo conveyed to Mr. Hazelton more than that portion of Mr. Brandenburg's alleged comments to the effect that the prices of plaintiff's Basic CLINs were "okay."

Unburdened by the implications of Mr. Brandenburg's alleged instruction to Mr. Campolo to reduce the prices of plaintiff's Option CLINs by 50%, plaintiff's counsel advanced upon the court, and against opposing counsel, a claim supported by incomplete and misleading facts. Despite his awareness of Mr. Brandenburg's instruction, plaintiff's counsel signed a verified complaint and motion for a temporary restraining order and/or injunctive relief, arguing that plaintiff had been misled by Mr. Brandenburg's statement that the prices of plaintiff's Basic CLINs were "okay," yet never disclosing the second critical component of Mr. Brandenburg's instruction that would have put Mr. Campolo in jeopardy of violating the PIA.

Most troubling, however, is the manner in which these actions affected the scope of discovery. The court's July 22, 1998 order denying plaintiff's application for temporary and preliminary injunctive relief allowed plaintiff to take written and deposition discovery from defendant and intervenor with regard to plaintiff's allegations of unfair and unequal treatment afforded intervenor with respect to: 1) the contrast between the original concerns raised and its "excellent" past performance rating; 2) negotiations; and 3) the timing of the waiver of the FAT requirement. Soon thereafter, defendant filed its Motion for a Protective Order Quashing Certain Discovery:

> [W]hen viewed against the circumstances surrounding the procurement, plaintiff's claims that the Army's communication with Optex were extraordinary or improper are without merit. Plaintiff goes further, however, by alleging that during the April 28, 1998 discussions with [plaintiff] to address its past performance deficiencies, the Army's Contract Specialist told [plaintiff] not to lower its price. This claim is particularly important to plaintiff—without it, it would have very little basis for discovery because other claims are addressed by the Administrative Record.

Def's Br. filed Aug. 13, 1998, at 13 (citations omitted). In opposing defendant's discovery motion, plaintiff argued:

> Contrary to Defendant's assertions, there is substantial evidence that [plaintiff] was misled during the discussions process. The Complaint in this case, which was verified under oath by [plaintiff's] President, documents that Contract Specialist Richard Brandenburg advised [plaintiff's] President following a meeting at the Army's offices on April 28, 1998 that there was no need to change [plaintiff's] proposed prices for the basic CLINs. . . .
>
> Unlike the bald and unsupported denial of the Army's Contract Specialist, the declaration of MHI's President is corroborated by contemporaneous evidence. Shortly after this discussion, Mr. Campolo made telephone calls to two colleagues about Mr. Brandenburg's remarks on [plaintiff's] pricing. One call was to his attorney, David Hazelton, and the other was to [plaintiff's] consultant, Vincent Cervellieri.

Plf's Br. filed Aug. 19, 1998, at 3–4. Plaintiff attached Mr. Campolo's declaration executed on August 17, 1998, in support of this filing.

On August 20, 1998, the court ordered that plaintiff be allowed the opportunity to question Mr. Brandenburg about his affidavit and to pursue written discovery consistent with the July 22, 1998 order. The court recalled its comments advising defendant during the July 22, 1998, hearing on plaintiff's motion for a preliminary injunction: "I would not have let this case go beyond the administrative record were it not for the affidavits and the fact that Mr. Campolo made an allegation about Mr. Brandenburg that I obviously cannot resolve at this date." Transcript of Proceedings, *Miller–Holzwarth Inc. v. United*

*States,* No. 98–576C, at 67 (Fed.Cl. July 22, 1998). The court also noted in its August 20, 1998 order that plaintiff's allegation regarding Mr. Brandenburg was made in a verified complaint and that Mr. Brandenburg's affidavit, in which he disputed Mr. Campolo's allegation, was not so compelling as to preclude plaintiff from attempting to establish bad faith on the part of a government official exercising his contracting function.

Although *Dyn Logistics* does not "mirror" the instant case, as defendant suggests, *see* Def's Br. filed Feb. 16, 1999, at 17, it does stand for the proposition that sanctions may be levied against an attorney who certifies a document containing false or misleading statements. Assuming that Mr. Campolo, in fact, did relate the full extent of his alleged conversation with Mr. Brandenburg to Mr. Hazelton, the lack of candor before the court, as manifested in plaintiff's verified complaint and in plaintiff's subsequent filings, does not satisfy the standard imposed by RCFC 11. The court must assume that the claims and arguments pressed before it are grounded in good faith. Based upon a claim that he knew to be factually and legally misleading, plaintiff's counsel: (1) signed and filed a verified complaint on July 14, 1998; (2) moved the court for preliminary injunctive relief by motion signed by him and filed on July 20, 1998, and in statements during argument on July 22, 1998; (3) argued that the scope of discovery should encompass the very facts that plaintiff was concealing, by motion signed and filed August 19, 1998, in opposition to defendant's motion for a protective order; and (4) permitted discovery to continue under the misleading impression that all of the operative facts had been disclosed concerning Mr. Campolo's alleged conversation with Mr. Brandenburg.

The possibility that Mr. Hazelton did not appreciate the gravity of Mr. Brandenburg's alleged instruction to lower plaintiff's Option CLIN's by 50% is belied by Mr. Hazelton's awareness of the instruction, failure to timely disclose it in plaintiff's pleadings and subsequent filings, and abandonment of the claim that plaintiff was misled after the instruction was entered into the record. Nonetheless, if plaintiff's attorney did not appreciate initially the significance of Mr. Brandenburg's comments, as well as the questionable conduct of his client in response thereto, a reasonable investigation undoubtedly should have altered the attorney's approach to that aspect of plaintiff's case.[15]

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Intervenor's motion for sanctions is granted. Intervenor shall be entitled to recover its reasonable expenses, including reasonable attorney's fees, incurred in connection with plaintiff's claim of unfair treatment arising from Mr. Campolo's alleged conversation with Mr. Brandenburg. Because plaintiff mounted a legitimate protest on two other, completely separate, grounds, intervenor's motion is otherwise denied insofar as it seeks all of its attorney's fees incurred in defending the bid award. The amount of expenses and fees shall be borne equally between plaintiff and plaintiff's counsel of record, or, in the alternative, by plaintiff and Mr. Hazelton's law firm, Latham & Watkins.

2. Intervenor shall submit by April 30, 1999, a statement of its expenses, including attorney's fees, attributable to the issues that it was forced to address due to Mr. Campolo's statements about Mr. Brandenburg's alleged remarks. By May 10, 1999, plaintiff may file an objection as to apportionment of amount.

3. By April 14, 1999, the parties shall file requests for deletion of protected/privileged

---

**15.** Defendant also argues RCFC 11 precluded plaintiff or its counsel from advancing this claim "on the slight chance that discovery might add color to their claim." Def's Br. filed Feb. 16, 1999, at 19. Defendant correctly observes that " '[i]t is not permissible to file suit and use discovery as the sole means of finding out whether you have a case.... Rule 11 requires an independent inquiry.' " *Judin,* 34 Fed.Cl. at 490

(quoting *Szabo Food Serv., Inc. v. Canteen Corp.,* 823 F.2d 1073, 1083 (7th Cir.1987)). However, in light of the several substantial allegations in plaintiff's verified complaint, which were not dependant on the alleged remarks of Mr. Brandenburg, the court is satisfied that plaintiff and its attorney had sufficient bases to advance plaintiff's protest beyond the mere expectation that discovery might substantiate plaintiff's claims.

material before the court issues its opinion for publication.

